THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM J. DeROSSETT, Defendant-Appellant.

Fourth District   No. 4—92—0163

Opinion filed November 25, 1992.

318

Daniel D. Yuhas and Arden J. Lang, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

After a jury trial in Champaign County, defendant, William J. De-Rossett, was found guilty of criminal trespass to real property. (Ill. Rev. Stat. 1991, ch. 38, par. 21—3(a).) He was sentenced to 30 days' imprisonment in the Champaign County correctional center.

Defendant appeals from his conviction and sentence. He argues (1) he was not proved guilty beyond a reasonable doubt; (2) applying the law of criminal trespass to real property to his conduct violated his first and fourteenth amendment rights (U.S. Const., amends. I, XIV); and (3) he was denied his sixth amendment (U.S. Const., amend. VI) right to provide a defense by the trial judge's denial of his request for a continuance the day the trial began. Defendant also argues he was denied a fair trial because (4) the trial judge refused to order the recording of the *voir dire* proceedings; (5) the judge denied the parties an opportunity to present an opening statement; and (6) the judge improperly restricted his cross-examination of the State's two witnesses. Defendant also argues (7) the State's improper rebuttal argument requires reversal; (8) the jury instructions were fatally flawed because they did not include a mental state; and (9) the trial judge abused his discretion by allowing the jury to review only a portion of one State witness' testimony. Defendant finally argues (10) the trial judge imposed an excessive sentence.

We reverse defendant's conviction. The trial judge abused his discretion by denying the parties an opportunity to present opening statements. Prejudicial error also occurred when the trial judge, in response to inquiry by the jury, highlighted only a portion of a witness' testimony. We address additional issues raised by defendant only because they may arise during his retrial.

## I. Facts

On December 2, 1991, defendant was charged by information with criminal trespass to real property. (Ill. Rev. Stat. 1991, ch. 38, par. 21—3(a).) It was alleged defendant knowingly entered a building of the Urbana police department after receiving, before he entered, notice from the occupant, Sergeant Michael R. Miller, that such entry was forbidden.

## A. *Pretrial Proceedings*

Defendant was arraigned on December 2, 1991. Over his objection, the trial judge appointed an assistant public defender, Jack Hildebrand, to represent him. Defendant again objected to the appointment of counsel at a pretrial hearing on January 8, 1992. Before the trial began on January 14, Hildebrand sought to withdraw from the case so defendant could represent himself. The trial judge first determined the State had made a plea offer, which Hildebrand communicated to defendant, but defendant wanted to proceed to trial. Defendant again requested permission to represent himself. The trial judge acquiesced and permitted defendant to appear *pro se* while Hildebrand remained as standby counsel.

The judge announced *voir dire* proceedings would not be recorded. Defendant objected. He was then told his trial would begin in approximately two minutes. Defendant requested time to prepare his defense, explaining he had not prepared because he had consistently been told he could not represent himself. The trial judge denied his request for a continuance, noting the trial had been set for trial since December 2, 1991. The trial judge excused the court reporter, and potential jurors were led into the courtroom. Defendant again objected to the *voir dire* not being recorded. The judge proceeded with *voir dire*.

After *voir dire*, the judge stated defendant had objected to jury selection and had requested each juror receive a copy of the constitution, the information, and the police reports. The judge noted for the record that he had conducted the *voir dire* and had excused two jurors at the request of defendant's standby counsel and an additional juror at the State's request. Defendant then interjected he had objected to three additional jurors. Over defendant's objection, the trial judge informed the jury he was not permitting counsel to make opening statements. The judge explained to the jury that defendant was representing himself. On two occasions during his opening remarks, the judge stated he did not know what would happen or how things would proceed.

## B. *Trial Testimony*

The State presented two witnesses to the incident leading to the charge lodged against defendant. Sergeant Michael R. Miller, a shift commander, was in charge of the Urbana police station on November 30, 1991. Defendant entered the lobby at approximately 7:45 a.m. and summoned Miller by ringing a buzzer near the front-desk area. The

station lobby was approximately 12 feet by 10 feet. A concrete block wall, a security door, and a bulletproof glass window separated the officer's front-desk area from the lobby area. The public had access to the lobby and communicated with the police through a small opening in the glass window.

When defendant approached, he was unkempt and smelled strongly of body odor, and had parked a shopping cart outside the front door. He informed Miller he had arrested Sergeant Metzler, the acting watch commander on the night shift, and had come to the station to place Metzler in custody. Metzler had previously told Miller about his earlier encounter with defendant.

Miller told defendant he could file a complaint if he felt Metzler had mistreated him. According to Miller, he also recommended defendant speak with the State's Attorney, whose office was in the courthouse, to see whether criminal charges against Metzler were warranted. Defendant told Miller he was under arrest for armed resistance. Miller stated he informed defendant at least 12 times what recourses were available to him. Miller explained Metzler was not present and the police could not help defendant. Defendant repeatedly summoned Miller to the front desk.

Miller obtained a complaint form and asked Officer Dean Yount to accompany him into the lobby. Miller handed defendant the complaint form and repeated several times to defendant what recourse he might take. Defendant stated Miller was not listening because he (defendant) was not leaving until he placed Metzler in custody. Miller stated defendant had no further legitimate business at the Urbana police station and repeatedly requested that defendant leave the building. Defendant refused to leave, stating he was not leaving without Metzler. Miller told defendant he was trespassing, took defendant's arm, and escorted him out the front door of the police station.

Once outside, Miller again told defendant how he could pursue his complaint against Metzler. Miller advised defendant if he returned to the station and "continued to disrupt the activity there," he would be arrested for criminal trespass. According to Miller, he spent 45 minutes reasoning with defendant before escorting him outside the station. When defendant followed Miller back into the building, defendant was arrested for trespassing.

Officer Yount testified that between 8 a.m. and 8:30 a.m. on November 14, Miller summoned him from patrol to return to the station. Miller asked Yount to accompany him into the lobby to confront defendant. Miller told defendant what options he could pursue regarding his complaint against Metzler. According to Yount's testimony on

cross-examination, two to four minutes before defendant was escorted outside, Miller handed him the complaint form which he could file against Metzler. After defendant was escorted outside the station, Yount heard Miller tell defendant he was not allowed to reenter the station. Yount estimated he and Miller spent 20 minutes in the lobby with defendant before they escorted him from the building.

The trial judge denied defendant's request to impeach Yount with Miller's police report. Defendant and his standby counsel decided not to recall Miller. Standby counsel recommended defendant not testify. Defendant did not testify. He stated he had no time to prepare. The defense presented no testimony.

In closing argument, the State made the following comment: "[Defendant] does not have legitimate business there. Who knows what's next. Maybe if he doesn't like a cut of meat, he will go to the butcher [and] try and arrest the butcher and tie up their [sic] business." The trial judge overruled defendant's objection to these comments. The judge also overruled defendant's objection to the State's remark that if it were a supermarket and not a police station, the jury would have no difficulty overcoming the hurdle of finding someone guilty.

### C. *Jury Instructions and Jury's Inquiry*

At the jury instruction conference, the court overruled defendant's general objection to each instruction tendered by the State. Defendant stated he had no time to prepare instructions.

During deliberation, the jury inquired in writing about the definition of a building and whether a porch and steps are parts of a building. It also asked if defendant had been forbidden to reenter only until he had legitimate business or if he had been permanently forbidden to reenter the police station. Finally, the jury inquired whether there was a specific time frame during which defendant could not reenter the station. Defendant and his standby counsel agreed the trial judge should not respond to the jury's questions. The prosecutor agreed as well. The judge instructed the jury it must decide the case based on the evidence presented.

The jury inquired again in writing. It asked if Miller had testified defendant was (1) forbidden to reenter or (2) forbidden to reenter until he had legitimate business. Over the request of defendant and standby counsel that the judge *not* provide the jury with additional information, the judge had the court reporter review her notes of the State's redirect examination of Miller. Over additional objection by defendant, the judge summoned the jury into the courtroom. The

judge concluded the information the jury requested was straightforward. Standby counsel objected, arguing the portion of the testimony the court proposed to read back was isolated and, in large part, the product of a leading question by the State. The court reporter read to the jury the following redirect questions and answers:

"Q. [Prosecutor:] And, one of the last things you told him in the conversation was, you told him if he came back into the lobby, since he had no legitimate business after you talked to him for forty[-]five minutes, that you would arrest him for trespass, isn't that true?"

A. [Miller:] Yes, sir, that is true.

Q. *** [Y]ou went back inside and he turned right back and followed you inside, isn't that true?

A. Yes sir, that's correct."

Approximately 45 minutes after this testimony was read to the jury, it found defendant guilty of criminal trespass to real property. Ill. Rev. Stat. 1991, ch. 38, par. 21—3(a).

### D. *Sentencing Factors*

Defendant was 47 years old when the offense occurred. He had been unemployed for five years. Defendant reported he received public aid, food stamps, and social security income "because of the effects of alcoholism upon his mind and body." He consumed alcohol to cope with back pain, but had not consumed alcohol in the past 12 months. He received treatment for a gastrointestinal condition before he stopped consuming alcohol.

Defendant served in the Army, both in Korea from September 1962 through November 1963 and a three-year term in Germany from December 1966 through January 1968. He also served in Vietnam from March 1968 through March 1969. Defendant was honorably discharged from the service and had never been disciplined. After his discharge, defendant attended Parkland College. He had earned 18 semester credit hours and attained a cumulative grade point average of 3.00 on a 4.00 scale.

He described his physical health as not good. While in the service he sustained three ruptured discs, a broken ankle, and a severe injury to his ankle. In spring 1984, and again in summer 1985, defendant's right lung collapsed. He experiences shortness of breath and dizziness.

Defendant's prior criminal record consisted of a battery offense in 1977 for which he received 12 months' supervision. In 1989 his driver's license was suspended for allegedly concealing a material fact or

making a false statement when applying for his license. A month later, defendant was convicted of driving with an expired registration and was fined. In January 1990 defendant's driver's license was suspended for one year.

Defendant was interviewed by a representative from intensive probation services, and a suitability report was filed which indicated defendant did not meet the minimum acceptance criteria established by the program for misdemeanor offenders. The report indicated defendant stated he would not cooperate with the program's conditions and goals. Attached to the report was the waiver signed by defendant "under duress" which indicated he would not participate in the intensive probation supervision (IPS) and he did not want the court to consider IPS as a sentencing option.

At the sentencing hearing in February 1992, defendant disputed only the accuracy of the information in the presentence report related to alleged driver's license suspensions. The State recommended defendant receive the maximum sentence of 30 days' incarceration because defendant would not abide by any other sentencing alternative. At the hearing, defendant indicated he would appeal any sentence imposed—even if the sentence imposed was time served.

The trial judge imposed a sentence of 30 days' incarceration. He indicated he had considered all relevant factors before imposing sentence. He noted defendant's uncooperative attitude toward the probation department representatives when they were preparing defendant's presentence report. He also noted defendant's indication he would not cooperate with the IPS program.

The trial judge concluded IPS was not an appropriate disposition and also concluded conditional discharge or probation were not appropriate sentences because imposition of either would not affect defendant and would not protect the public. Before imposing sentence, the judge indicated he had considered defendant's situation, history, character, and background.

## II. DEFENDANT'S ARGUMENTS

We first address a motion to strike taken with this case on appeal. Defendant argues the State's brief should be disregarded in part or totally because it does not conform with Supreme Court Rule 341 (134 Ill. 2d R. 341). Defendant contends the State blatantly disregarded Supreme Court Rules 341(e)(6) and (f) by including its statement of facts *within* its argument on defendant's allegation he was not proved guilty beyond a reasonable doubt. (134 Ill. 2d Rules 341(e)(6), (f).) Defendant argues, in the alternative, the State's brief should be

stricken entirely because the State did not timely file its motion to file a brief in excess of the page limitations and its motion does not adequately establish the necessity of the brief's length. 134 Ill. 2d R. 341(a).

The striking of an appellate brief, in whole or in part, is a harsh sanction. (*People v. Flanagan* (1990), 201 Ill. App. 3d 1071, 1075, 559 N.E.2d 1105, 1108.) Such a sanction is appropriate only when the alleged violations of the procedural rules regarding appellate briefs interfere with or preclude review. *Flanagan*, 201 Ill. App. 3d at 1075, 559 N.E.2d at 1108; *James v. Yasunaga* (1987), 157 Ill. App. 3d 450, 452, 510 N.E.2d 531, 533.

■ We reject defendant's arguments. His argument the facts included by the State do not relate to the argument raised is incorrect. A question of reasonable doubt may require repeating the evidence presented at trial. Moreover, the State's brief substantially complies with the relevant rules. We believe the appellee may recite facts in the argument portion of the brief if those facts fairly recount the testimony at trial. Although within its argument, this inclusion does not interfere with this court's understanding of the issues raised or the evidence presented. In addition, we granted the State's request to submit its brief in excess of the page limitations. We note defendant filed his brief beyond the established deadline. Defendant's motion to strike is denied.

### A. *Reasonable Doubt*

Defendant contends he was not proved guilty beyond a reasonable doubt because the testimony of Miller and Yount conflicted regarding the two elements essential to proving a criminal trespass to real property. He contends the evidence was insufficient to prove he received notice that entry into the police station was forbidden, or that he left the station intending to make his an unlawful reentry.

A court of review will reverse a conviction only when the evidence is so unsatisfactory as to raise a reasonable doubt about the defendant's guilt. *People v. Yates* (1983), 98 Ill. 2d 502, 518-19, 456 N.E.2d 1369, 1377-78; *People v. Evans* (1990), 199 Ill. App. 3d 330, 336, 556 N.E.2d 904, 907.

The criminal trespass to real property statute provides in relevant part:

> "Whoever enters upon the land or a building, other than a residence, or any part thereof of another, after receiving, prior to such entry, notice from the owner or occupant that such entry is forbidden, or remains upon the land or in a building,

other than a residence, of another after receiving notice from the owner or occupant to depart, commits a Class C misdemeanor." Ill. Rev. Stat. 1991, ch. 38, par. 21—3(a).

The statute criminalizes two forms of conduct. It forbids entry onto the property of another, knowing such entry is forbidden. It also forbids remaining on property after being told to leave, even if the initial entry was lawful. (*People v. Flanagan* (1985), 133 Ill. App. 3d 1, 3, 478 N.E.2d 666, 667; *People v. Ulatowski* (1977), 54 Ill. App. 3d 893, 896, 368 N.E.2d 174, 176.) This case falls within the first category of proscribed conduct under which the elements of the offense are (1) a person is told by the occupant of a property that entry onto the property is forbidden; and (2) the person enters the property despite the warning.

### 1. Notice

Defendant initially argues the evidence did not show he received notice before he reentered the building. Miller testified he spoke with defendant inside the station for approximately 45 minutes while unsuccessfully explaining how defendant could proceed with a complaint against Metzler. Miller then secured defendant's arm and escorted him out of the station. He again explained to defendant his options. He told defendant if he returned to the station and "continued to disrupt the activity there," he would be arrested for criminal trespass. Miller reentered the station and defendant followed him. Defendant was placed under arrest.

Yount also testified Miller asked defendant to leave because he had no legitimate business to conduct at the station. He saw Miller secure defendant's arm and escort defendant outside. He also testified he heard Miller tell defendant he was not allowed to reenter the police station.

■ If defendant's conviction were not being reversed on procedural grounds, the evidence would be sufficient for a fact finder to conclude defendant received notice that he should not reenter the station. Defendant argues the evidence was insufficient because Miller only informed him he would be arrested if he reentered the station. The statute does not require the owner or occupant to notify the person of the offense he would commit if he enters the property knowing entry is forbidden. It requires only the owner or occupant notify the person entry is prohibited.

Miller's and Yount's testimony about what defendant was told was not identical. Miller's direct testimony was that he told defendant he would be arrested if he returned *and continued to cause problems.*

Yount testified Miller told defendant he could not reenter the station. Although the officers' testimony on direct examination did not clearly establish defendant was told under no circumstances could he reenter the station after being ejected, the jury could reasonably have concluded the evidence established defendant was properly notified his reentry was prohibited.

Miller spent 45 minutes explaining to defendant what his options were in filing a complaint or criminal charges against Metzler. Miller had to summon Yount from patrol for assistance in removing defendant from the station. Being escorted from the station by his arm under the control of two police officers would suggest to a person of normal intelligence that he should not turn around and follow the officers back into the station.

We also reject the argument that Miller's testimony seemed colored by emotion and irritation so as to render it unbelievable. Second-guessing the jury's determination on witness credibility is not our duty. The fact finder's determinations of witness credibility are entitled to deference on review. (*People v. Booker* (1992), 224 Ill. App. 3d 542, 550, 585 N.E.2d 1274, 1280; *People v. McCarthy* (1991), 213 Ill. App. 3d 873, 880, 572 N.E.2d 1219, 1223-24.) Moreover, Miller testified on redirect examination that he told defendant he could not reenter the station. The jury could have believed this testimony, in conjunction with Yount's testimony, proved beyond a reasonable doubt that defendant knew he was barred from reentering the station.

### 2. Reentry

■ Defendant also argues the evidence did not sufficiently establish he exited the building before he was arrested for reentering it after receiving warning not to reenter. He directs us to admissions made by Miller during cross-examination which he claims support the view that he never left the station before being arrested. He also points to the jury's confusion about this issue as, he contends, is evidenced by questions the jury asked about whether the building's steps, porch, and sidewalk should be considered part of the building.

Miller's responses to defendant's questions on cross-examination do not establish that defendant had not been removed from the police station. Defendant asked Miller whether he believed he (defendant) had willingly left the station. After further clarification that defendant was referring to his departure when Miller escorted him from the station, Miller responded defendant "never really left" but that he "walked out the front door with [Miller]." Defendant asked, "In other words, you removed me?" Miller responded, "Yes, sir. I took you by

the arm and walked you outside and you walked outside with me." Defendant then asked, "So, I had not left the station willingly?" Miller responded, "Well, I had asked you to do so verbally several times and you refused and that's when I took you by the arm and walked outside with you."

This cross-examination establishes defendant did exit the police station before reentering and being placed under arrest, having been warned not to return. The jury could have reasonably concluded defendant exited the station after he was warned he had no legitimate business there and he was arrested when he reentered the station.

### B. *Right to Petition the Government*

Defendant next argues the criminal trespass to real property statute, as applied to him, violated his rights under the first and fourteenth amendments to the United States Constitution (U.S. Const., amends. I, XIV). He contends Miller ousted him from the station and denied him reentry because Miller did not agree with the content of defendant's grievance. According to defendant, he had a right to remain in the lobby of the station or to reenter it to file his complaint against Metzler because the lobby was open to the public to enable individuals to file such complaints.

The State argues no constitutional violation occurred because when defendant was ousted from the station, he then had no further legitimate business there. He refused to follow appropriate procedures for filing a complaint, instead demanding to take Metzler into custody. These actions impeded the operation of the police station.

Defendant's first amendment protections were not violated. He was not conveying a particularized message to Miller, Yount or members of the public. Moreover, although the Urbana police station presumably processes citizens' complaints against its officers, defendant's right to petition the government for redress did not include a right to disturb the normal functioning of the police station.

### 1. Communicative Element

In evaluating whether defendant's conduct is protected by the first amendment, the United States Supreme Court considers whether "[a]n intent to convey a particularized message was present and *** [whether] the likelihood was great that the message would be understood by those who viewed it." (*Spence v. Washington* (1974), 418 U.S. 405, 410-11, 41 L. Ed. 2d 842, 847, 94 S. Ct. 2727, 2730.) Defendant's insistence on remaining in the police station until he ar-

rested Metzler, and his communications during this time, did not present a particular political or social message which Miller and Yount would necessarily understand. Although defendant argues he remained to assert his right to file a complaint, the testimony of Miller and Yount contradicts this allegation. The evidence presented at his trial does not establish his reentry into the station was to convey a particular message to Miller.

## 2. Access to Police Station

The City of Urbana has a right to protect its property. The government, "no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." (*Adderley v. Florida* (1966), 385 U.S. 39, 47, 17 L. Ed. 2d 149, 156, 87 S. Ct. 242, 247.) The government need not permit free speech activities on all property. It can consider the nature of the property and the disruption which might be caused by the speaker's activities. *Cornelius v. NAACP Legal Defense & Educational Fund, Inc.* (1985), 473 U.S. 788, 799-800, 87 L. Ed. 2d 567, 578, 105 S. Ct. 3439, 3447.

The Urbana police station is a nonpublic forum which is not designated as an area for people to communicate their grievances with the police. Defendant could file a complaint within the office, but he could not stage a one-person demonstration within the office against the Urbana police department's practices—or against one officer's conduct.

■ At one end of the spectrum of forum analysis are public forums, which are streets and parks which "have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague v. Committee for Industrial Organization* (1939), 307 U.S. 496, 515, 83 L. Ed. 1423, 1436, 59 S. Ct. 954, 964.

The second category of forum is public property which the government has opened for use by the public as a place for expressive activity. Such property is categorized as a limited public forum. Both types of forums permit the government to enact reasonable time, place, and manner regulations on use of the forum. Moreover, a content-based prohibition must be narrowly drawn to bring about a compelling State interest. (*Widmar v. Vincent* (1981), 454 U.S. 263, 269-70, 70 L. Ed. 2d 440, 447-48, 102 S. Ct. 269, 274.) The Urbana police station has not been opened to the public for expressive activities merely because it accepts grievances from citizens.

■ Public property which is not by tradition or by designation a forum for public communication is governed by different standards. A public-owned facility which is dedicated to use for either communicative or noncommunicative purposes, but has never been designated for indiscriminate expressive activity by the general public, is categorized as a nonpublic forum.

The government may reserve the nonpublic forum for its intended purpose, communicative or otherwise, as long as the regulation on speech is reasonable and is not merely to suppress expression because public officials oppose the speaker's view. Access to a nonpublic forum can be based on content and subject matter if the distinctions drawn are "reasonable in light of the purpose which the forum at issue serves." *Perry Education Association v. Perry Local Educators' Association* (1983), 460 U.S. 37, 49, 74 L. Ed. 2d 794, 807, 103 S. Ct. 948, 957.

■ The Urbana police station is a nonpublic forum. It is reasonable for the government to limit expressive conduct within the confines of the station. Defendant may have had a right to file a grievance, but he has no constitutional right to interfere with the workings of the police station for a duration of 45 minutes and refuse to leave despite receiving an explanation of his options and a complaint form which he was told he could file against Metzler.

The lobby of the station was open to the public, but for a limited purpose. The lobby was restricted in size. When defendant sought to exercise his alleged first amendment right, only one officer staffed the station. Miller was forced to summon Yount from patrol to assist in ejecting defendant from the station.

The Urbana police can restrict a citizen's access to express his or her views while in the police station. Defendant refused to follow the proper procedure for pursuing a citizen's complaint. He also interfered with the performance of police duties by expressing his complaint in a disruptive fashion and for an extended period. The station was a nonpublic forum and defendant was properly arrested and prosecuted for criminal trespass to real property because he was not engaged in free speech activities protected by the first amendment.

## C. *Fair Trial*

Although defendant discusses each of the four reasons discussed below as reason for reversal of his conviction, each raises the same general objection, *i.e.*, that defendant was denied a fair trial.

## 1. Denial of Continuance

Defendant argues his due process protections were infringed when the trial judge denied his request for a continuance to enable him to prepare for his trial. He reasons he was not informed until moments before the trial occurred on January 14 that he could proceed *pro se*.

A defendant must be provided sufficient time to prepare his defense and receive advice from counsel. (*Powell v. Alabama* (1932), 287 U.S. 45, 77 L. Ed. 158, 53 S. Ct. 55.) Defendant argues he was effectively denied the assistance of counsel by the judge's refusal to grant him a continuance. He contends he was surprised the trial was beginning January 14 and was prejudiced because he lacked preparation time. He allegedly lacked time to prepare cross-examination, jury instructions, and a closing argument; research the law; and prepare to testify.

When a case has reached trial, the trial judge must only grant a continuance if a sufficient excuse justifies such delay. (134 Ill. 2d R. 231(f).) The State argues defendant and his standby counsel had a reasonable opportunity to prepare defendant's case. A court of review will not reverse a trial judge's denial of a continuance unless the denial prejudiced defendant. *People v. Wilson* (1963), 29 Ill. 2d 82, 92, 193 N.E.2d 449, 454; *In re Tally* (1991), 215 Ill. App. 3d 385, 390, 574 N.E.2d 1262, 1265; *People v. Barnes* (1985), 130 Ill. App. 3d 1026, 1030, 475 N.E.2d 265, 268.

■ The record indicates defendant and his standby counsel were not unprepared for trial. Hildebrand was appointed as defendant's counsel December 2, 1991, when defendant made his initial appearance in court. Counsel had six weeks to prepare before trial. He did not indicate to the trial judge that he was not prepared to proceed as defense counsel. He remained as standby counsel to defendant and participated in defendant's trial.

Contrary to defendant's claim, this case is similar to this court's ruling in *Barnes*. There, on the day of trial, the judge denied the public defender's motion to withdraw as defense counsel, and at defendant's request, appointed the public defender to serve in an advisory capacity. Defendant argued the judge erred by denying his motion for a continuance because his role was analogous to newly appointed counsel and he required preparation time. The *Barnes* court concluded the judge had not abused his discretion because, although defendant may have felt unprepared for trial, his advisory counsel was well prepared. Defendant specifically sought assistance from the pub-

lic defender during the trial and counsel actively participated in the proceedings. *Barnes*, 130 Ill. App. 3d at 1030, 475 N.E.2d at 268.

Similarly, Hildebrand served as advisory counsel to defendant. Defendant sought assistance from Hildebrand before the trial judge offered to assign Hildebrand to that capacity. Hildebrand actively participated in the proceedings. Before trial, he obtained the police reports related to the incident and entered plea negotiations with the State. During *voir dire* he exercised two peremptory challenges on defendant's behalf. He cross-examined Yount, advised defendant against testifying on his own behalf, and reviewed the State's jury instructions and objected to some of them. He also submitted an instruction on defendant's behalf, objected to the judge responding to jury's inquiries after deliberations began, and filed a post-trial motion on defendant's behalf.

Moreover, although defendant informed the trial judge he was unprepared, he did not contend he lacked material evidence or he had witnesses to present whom he had not contacted. Defendant did not allege a factual defense which required more time to develop. The judge made both State's witnesses available to defendant to call as his own witnesses. The denial of defendant's request for a continuance did not prejudice his defense.

### 2. No Opening Statements

Defendant next argues the trial judge's decision, despite defendant's objection, not to permit opening statements violates the express mandate of Supreme Court Rules 235 and 432 (134 Ill. 2d Rules 235, 432). Rule 432 provides opening statements in criminal cases are governed by Rule 235, which states:

"As soon as the jury is impaneled the attorney for the plaintiff may make an opening statement. The attorney for the defendant may immediately follow with an opening statement. An opening statement may not be made at any other time, except in the discretion of the trial court." 134 Ill. 2d R. 235.

The State argues defendant was not prejudiced by the judge's decision to dispense with opening statements. Defendant was permitted to let his theory of his defense develop as the evidence was presented because he had not provided the jury, in advance, an outline of his alleged defense. It also contends that any error occasioned by this ruling was harmless in light of the evidence presented at trial.

■ The historical and practice notes to Rule 235 indicate the rule was revised to grant the trial judge discretion to decide whether a party can make its argument during different stages of the proceed-

ing. For example, a defendant may prefer to make his opening remarks after the State presents its case in chief. (Ill. Ann. Stat., ch. 110A, par. 235, Historical and Practice Notes, at 499-500 (Smith-Hurd 1985).) The rule does not grant discretion to the trial judge to decide to dispense with opening remarks. Parties have a right to make opening and closing arguments. This decision is not left to the trial judge's discretion. See M. Graham, Cleary & Graham's Handbook of Illinois Evidence §611.2, at 397 (5th ed. 1990); *Liptak v. Security Benefit Association* (1932), 350 Ill. 614, 619, 183 N.E. 564, 566.

We are aware of no authority permitting a trial judge to deny opening statements in a jury trial. The trial judge committed reversible error by denying the parties their mandated right to address the jury through opening statements.

### 3. *Voir Dire* Not Recorded

Defendant contends the trial judge's decision to dispense with recording the *voir dire* proceedings over his objection was reversible error. He contends that without a transcript of the proceedings his opportunity to appeal the selection process has been foreclosed. Defendant unsuccessfully moved to exclude all 15 venirepersons for cause and also objected when three of the jurors to whom he had objected were dismissed peremptorily.

▆▆ Defendant does not indicate by reference to the record how *voir dire* was flawed. Where no verbatim transcript is available to indicate an alleged error, the Illinois Supreme Court rules provide alternative methods for preserving the record. (134 Ill. 2d Rules 323(c),(d).) Defendant failed to submit a bystander's report or an agreed statement of facts. Defendant has waived any alleged error regarding the propriety of the trial judge's rulings during *voir dire. People v. McClurg* (1990), 195 Ill. App. 3d 381, 388, 552 N.E.2d 290, 294.

### 4. Prosecutor's Rebuttal

Defendant contends the State's rebuttal argument prejudiced his case. He initially complains about the statement that he had no legitimate business at the station. Second, he complains the State was permitted to analogize a police station to a supermarket. Defendant notes that one purchases goods at a market, but enters a police station for various reasons, including to petition the government for redress, a constitutionally protected right. Defendant contends the State's remarks were inflammatory.

The gist of defendant's closing argument was that he had not committed criminal trespass because he had a constitutional right to

pursue his complaint against Metzler. He claimed he had not intended to make a citizen's arrest of Metzler, but he merely wanted to voice his complaint about Metzler's actions. He contended the police discriminated against him by refusing to explain the procedures for filing a complaint and by withholding a complaint form until moments before evicting him from the premises.

Latitude allowed on rebuttal is within the sound discretion of the trial judge and will not be disturbed unless a clear abuse of discretion resulted in grave injustice to defendant. (*People v. Sandoval* (1990), 135 Ill. 2d 159, 194, 552 N.E.2d 726, 741-42; *People v. Collins* (1985), 106 Ill. 2d 237, 269, 478 N.E.2d 267, 281.) Reversible error occurs only when there is a reasonable basis for concluding the jury was prejudiced by improper remarks at closing. *People v. Whitlow* (1982), 89 Ill. 2d 322, 341, 433 N.E.2d 629, 638; *People v. Craddock* (1991), 210 Ill. App. 3d 791, 794, 569 N.E.2d 283, 285.

■■■ We conclude the State's remarks in this case were not improper. Arguments and statements which are based on facts and evidence or legitimate inferences from such evidence are permissible during the State's closing remarks. (*People v. James* (1990), 200 Ill. App. 3d 380, 393, 558 N.E.2d 732, 741; *People v. Baker* (1990), 195 Ill. App. 3d 785, 788, 552 N.E.2d 421, 423.) The State may respond to comments by the defense which invite or provoke such responses. (*People v. Vriner* (1978), 74 Ill. 2d 329, 344, 385 N.E.2d 671, 677; *James*, 200 Ill. App. 3d at 393, 558 N.E.2d at 741.) The jury was also advised that closing statements are not evidence.

The comments complained of by defendant were permissible pursuant to the above principles. Whether defendant had legitimate business at the station when his arrest occurred was at issue in the case. He contended he was legitimately there to pursue a constitutionally protected right to file a complaint. The State contended otherwise. The State could remark in rebuttal to defendant's contention that he had legitimate business at the station.

The State's comparison between the police station (and defendant's refusal to leave), and a supermarket—where defendant might also refuse to leave if he were disgruntled with a butcher—may not be precisely parallel, but it is arguably an analogy to defendant's alleged illegal conduct. The State can comment on the evil results of crime. (*People v. Jackson* (1981), 84 Ill. 2d 350, 360, 418 N.E.2d 739, 744; *People v. Ervin* (1992), 226 Ill. App. 3d 833, 846, 589 N.E.2d 957, 967.) Its suggestion that defendant would trespass on other property presented a plausible scenario of what might occur if the jury sanctioned defendant's conduct by finding him not guilty. The statements

made during the State's rebuttal, and permitted by the trial judge, were proper.

### D. Cross-examination of State Witnesses

Although Miller testified during direct examination that defendant had not resisted arrest, during cross-examination, defendant was not allowed to elicit that defendant had been arrested for criminal trespass and resisting a police officer. Neither was defendant permitted to elicit from Miller that he (Miller) was identified in the police report as the victim of defendant's offense. The court also denied defendant an opportunity to elicit from Miller how the charge against him read or what the information stated.

On re-cross-examination, defendant was not permitted to question Miller about the citizen's complaint form. The judge explained the law did not view the complaint form as evidence. Defendant also was not permitted to present evidence about why Miller thought defendant came to the police station, what the initial charges against defendant were, who selected the charges, and if Miller knew ahead of time what the charge would be.

Defendant was not permitted to ask Yount on cross-examination if he was familiar with the specific charge lodged against defendant. Defendant was also foreclosed from asking Yount about his constitutional duties or whether he was required to know about how to handle complaints, whether he ever handled a complaint, and whether defendant's complaint had been logged or if any action had been taken on it.

Defendant again directs us to the questions asked by the jury during deliberations. He argues these questions indicate the jury might have reached a different result had he been permitted to present evidence about the arrest charges lodged against him and the standard complaint process followed by the Urbana police.

Relevant evidence is evidence which tends to make the facts at issue more or less probable. (*People v. Enis* (1990), 139 Ill. 2d 264, 281, 564 N.E.2d 1155, 1161; *People v. Monroe* (1977), 66 Ill. 2d 317, 322, 362 N.E.2d 295, 297.) Defendant argues the excluded evidence was relevant because it made it more likely than not that he was *not* committing a trespass or that he was rightfully in the station to conduct legitimate business.

Defendant first argues the nature of the charges initially lodged against him was relevant to the issue of notice and knowledge, requisite elements of criminal trespass to real property.

Defendant next argues the excluded evidence was relevant to enable the jury to evaluate the officer's actions in this case against standard police procedure when a citizen seeks redress against a police officer. Defendant correctly notes the State in some criminal trials questions police witnesses to establish they followed proper procedure under the circumstances presented.

██ Defendant has waived review of this issue by not including it in his post-trial motion or the amended post-trial motion. *People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130; *People v. Sinnott* (1992), 226 Ill. App. 3d 923, 933, 590 N.E.2d 502, 509.

### E. *Jury Instructions*

Defendant argues reversible error occurred when the jury instruction provided did not contain the required mental state for the commission of criminal trespass to real property. He concedes neither he nor his standby counsel objected to the jury instructions on this basis. However, he directs us to a ruling of the First District Appellate Court that because criminal trespass is a specific intent crime, a mental state must be expressly stated in the jury instruction. *People v. Grant* (1981), 101 Ill. App. 3d 43, 47-48, 427 N.E.2d 810, 813-14.

People's instruction No. 7A provided the following:

"A person commits the offense of criminal trespass to real property when he enters a building after receiving prior to such entry notice from the occupant that such entry is forbidden."

(See Illinois Pattern Jury Instructions, Criminal, No. 16.05, at 339 (2d ed. 1981) (hereinafter IPI Criminal 2d) (now Illinois Pattern Jury Instructions, Criminal, No. 16.11, at 661 (3d ed. 1992) (hereinafter IPI Criminal 3d).) People's instruction No. 8A provided:

"To sustain the charge of criminal trespass to real property, the State must prove the following propositions:

First: that the defendant entered a building; AND,

Second: that the defendant, prior to the entry, received notice from the occupant of said building that such entry was forbidden."

See IPI Criminal 2d No. 16.06, at 340 (now IPI Criminal 3d No. 16.12, at 664).

Failure to object at trial to an asserted error in jury instructions is usually deemed to be waiver. In addition, parties cannot raise on appeal the failure to give an instruction unless they tendered it. (*People v. Huckstead* (1982), 91 Ill. 2d 536, 543, 440 N.E.2d 1248, 1251; *People v. Tannenbaum* (1980), 82 Ill. 2d 177, 180, 415 N.E.2d 1027,

1029.) Issues not raised in a post-trial motion are also generally waived on review. *Enoch*, 122 Ill. 2d at 186, 522 N.E.2d at 1130; *Sinnott*, 226 Ill. App. 3d at 933, 590 N.E.2d at 509.

■■■ Defendant waived consideration of error in the instructions because he did not proffer his own instructions or object to these instructions in a post-trial motion. We note the State misinformed the trial judge that the pattern jury instructions *did not* contain specific instructions related to criminal trespass to real property.

The pattern jury instructions list "knowingly" or "intentionally" or "recklessly" as the requisite intent which must be included in instructions for the offense of criminal trespass to property. (See, *e.g.*, IPI Criminal 3d Nos. 16.11, 16.12.) The relevant *mens rea* should be included in the instructions if at issue in the case. On remand the jury should be properly instructed according to the pattern jury instructions related to criminal trespass to real property.

### F. *Response To Jury Questions*

The jury began deliberating at 3:47 p.m. After earlier being denied additional information, the jury again sought information at approximately 5:30 p.m. It asked if Miller had testified that defendant was (1) forbidden to reenter *or* (2) forbidden to reenter until he had legitimate business.

Defendant and standby counsel objected to providing the jury additional information. Hildebrand indicated to the trial judge that he did not recall any testimony that defendant had been forbidden from reentering. He also opined the jury had heard the relevant evidence and should conclude for itself. The trial judge concluded the jury should be provided testimony elicited during *redirect* examination of Miller. Hildebrand again objected, contending the response to the State's Attorney's question should not be read back to the jury because it was leading. The following question and answer were then read to the jury:

"Q. [Prosecutor:] And, one of the last things you told him in the conversation was, you told him if he came back into the lobby, since he had no legitimate business after you talked to him for forty[-]five minutes, that you would arrest him for trespass, isn't that true?

A. [Miller:] Yes, sir, that is true.

Q. *** [Y]ou went back inside and he turned right back and followed you inside, isn't that true?

A. Yes sir, that's correct."

At 6:16 p.m. the jury reached a guilty verdict. Defendant argues the judge abused his discretion by furnishing this testimony to the jury. He argues these portions of the State's redirect examination of Miller were not indicative of the entire testimony and it did not specifically address the jury's questions. We agree that providing the jury this limited additional information was prejudicial and constituted reversible error.

Whether to permit a jury's request for a review of testimony is within the trial judge's discretion. (*People v. Franklin* (1990), 135 Ill. 2d 78, 105, 552 N.E.2d 743, 755; *People v. Pierce* (1974), 56 Ill. 2d 361, 363-64, 308 N.E.2d 577, 578; *People v. Govin* (1991), 213 Ill. App. 3d 928, 938, 572 N.E.2d 450, 457.) The trial judge must determine how helpful the testimony may be to the jury and how harmful providing additional information to the jury could be to its deliberations. (*Govin*, 213 Ill. App. 3d at 938, 572 N.E.2d at 457.) Absent an abuse of discretion, the trial judge's conclusion will not be disturbed. *Franklin*, 135 Ill. 2d at 105, 552 N.E.2d at 755; see also *People v. Olinger* (1986), 112 Ill. 2d 324, 349, 493 N.E.2d 579, 591.

■■■ The State argues the jury deliberation was not affected because Miller's testimony was the same on direct as in the redirect examination testimony read to the jury. This contention ignores a distinction between Miller's statements. His statement on redirect examination was prompted by the State's leading question, which asked whether it was correct that after 45 minutes, he had escorted defendant out of the station and told him not to return. To this question, Miller merely replied, in significant part, that this was correct. In contrast, on direct examination Miller stated he told defendant he would be arrested if he reentered the station *and continued to create problems.*

Yount testified he heard Miller tell defendant not to reenter the station. Testimony about what defendant was told after he was escorted from the station was contradictory regarding a significant factor in determining his guilt. The jury had to find defendant was sufficiently informed that he could not reenter the station. Highlighting Miller's redirect testimony by providing only it to the jury was prejudicial. This suggested the answer to the jury's question on what defendant was told about reentering was not at issue, but was clearly represented by Miller's redirect testimony. The trial judge committed reversible error by responding to the jury question in this form.

## G. *Excessive Sentence*

■■ We need not consider defendant's argument that the sen-

tence imposed was excessive, because we are reversing and remanding for a new trial.

### III. CONCLUSION

We note the trial judge's task in this case was made more difficult because defendant's actions were challenging. The trial judge has an easier task when there are skilled advocates on both sides of the case than when dealing with inexperienced counsel or *pro se* litigants. A trial judge faced with a *pro se* defendant who sorely tries his patience by a penchant for disruption may be tempted to modify trial procedures. This temptation may lead to a deprivation of rights. We do not suggest defendant should have been treated more favorably because he chose to proceed with his trial *pro se*. A *pro se* defendant must comply with rules of procedure required of those represented by counsel and a court should not apply more lenient standards to *pro se* clients. (*People v. Bond* (1989), 178 Ill. App. 3d 1020, 1023, 534 N.E.2d 156, 159.) However, a *pro se* defendant should not be treated less favorably than defendants represented by counsel.

Although the trial judge demonstrated patience in explaining to defendant both the potential ramifications of his decision to represent himself, and the reasons his continual objections to court rulings were overruled, defendant's procedural rights were violated. We reverse defendant's conviction.

The evidence was sufficient to convict defendant beyond a reasonable doubt, so double jeopardy concerns do not arise. (*People v. Taylor* (1979), 76 Ill. 2d 289, 309, 391 N.E.2d 366, 375.) Double jeopardy is not a bar where, as here, reversible error is the result of trial error. *Burks v. United States* (1978), 437 U.S. 1, 15, 57 L. Ed. 2d 1, 12, 98 S. Ct. 2141, 2149.

On remand, defendant should be permitted to provide an opening statement, the jury instructions should be pattern jury instructions, and, if the jury similarly inquires about evidence while deliberating, the trial judge should appropriately exercise his discretion. We reverse defendant's conviction and remand for a new trial.

Reversed and remanded.

GREEN, P.J., and McCULLOUGH, J., concur.