NO. 4-07-0972        Filed: 8-27-08

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE CITY OF COLLINSVILLE, ILLINOIS; and PAUL W. MANN, | ) ) | Appeal from Circuit Court of |
|      Plaintiffs and Counter- | ) | Sangamon County |
|      defendants-Appellants, | ) | No. 07MR170 |
|      v. | ) | |
| THE ILLINOIS MUNICIPAL LEAGUE RISK | ) | |
| MANAGEMENT ASSOCIATION, | ) | |
|      Defendant and Counter- | ) | |
|      plaintiff-Appellee, | ) | |
|      and | ) | |
| OSBORN HOMES, INC., JOSEPH E. OSBORN, | ) | Honorable |
| and DONALD P. OSBORN, | ) | Robert J. Eggers, |
|      Counterdefendants-Appellees. | ) | Judge Presiding. |

_____

JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiffs, the City of Collinsville, Illinois, and Paul W. Mann, appeal from a summary judgment order entered in a declaratory judgment action in favor of defendant, the Illinois Municipal League Risk Management Association (Association).

On October 15, 2007, the Sangamon County circuit court granted the Association's motion and denied a similar motion by plaintiffs. The controversy arose out of litigation filed in the Madison County circuit court against plaintiffs and removed to the United States District Court, Southern District of Illinois. The litigation alleged plaintiffs violated the constitutional rights of Osborn Homes, Inc., Joseph E. Osborn, and Donald P. Osborn (Developers), under section 1983 of the Civil Rights Act

(42 U.S.C. §1983 (2000)). The Sangamon County circuit court found the Association had no duty to defend or indemnify plaintiffs.

Plaintiffs appeal, arguing that the trial court erred by granting the Association's motion for summary judgment. We reverse and remand for further proceedings.

The Association is a nonprofit association that provides self-insurance programs to municipalities. The City is a member of the Association. As a member, municipal employees are represented in, and indemnified against, claims arising out of the performance of their jobs. Mann is an employee of the City.

Effective December 31, 2005, the Association issued certain coverage grants to the City pursuant to an "Inter-Governmental Cooperation Agreement" (Agreement). RMA 1 (Illinois Municipal League Risk Management Association General Liability Coverage Form) provides general liability coverage. RMA 2 (Illinois Municipal League Risk Management Association Comprehensive General Liability Coverage Form) provides an endorsement to RMA 1. RMA 3 (Illinois Municipal League Risk Management Association Liability Exclusions Form) sets forth certain specified liability exclusions applicable to RMA 1 and 2. RMA 4 (Illinois Municipal League Risk Management Association Public Officials/Employees Liability Coverage Form) provides public officials and employees liability coverage.

RMA 1 sets forth the following:

"Subject to the conditions of form RMA L [Illinois Municipal League Risk Management Association Liability Definitions, Exclusions and Conditions] and of this form and any endorsements that may be added, the Association agrees with the [m]ember to the following:

I. COVERAGE

The Association will pay on behalf of the [m]embers all sums which the [m]embers shall become legally obligated to pay as damages, defined as 'ultimate net loss', because of 'bodily injury' or 'property damage' to which this form applies; caused by an 'occurrence' within the 'coverage territory'."

RMA 2 is an endorsement to RMA 1 and sets forth a coverage extension to include "ultimate net loss" because of "personal injury" or "advertising injury." RMA 3 is an endorsement to RMAs 1 and 2, and sets forth exclusions. RMA 4 is a separate form that provides for payment by the Association, on behalf of the City, for all loss which the members shall be legally obligated to pay because of a "wrongful act" occurring during the coverage period.

On July 10, 2006, the Developers filed a complaint in the Madison County circuit court against plaintiffs seeking monetary damages for alleged violations of the Developers' constitutional rights under section 1983 of the Civil Rights Act (42 U.S.C. §1983 (2000)).  The Developers alleged (1) the City wrongfully failed or refused to act upon or approve the Developers' proposed subdivision plat and (2) Mann approved and actively participated in the violations of the Developers' rights.  The Association engaged the services of Schrempf, Blaine, Kelly, Mapp & Darr, Ltd., to serve as counsel for Mann.  On August 22, 2006, Mann removed the action from the Madison County circuit court to the United States District Court, Southern District of Illinois.

In a letter dated August 26, 2006, Martin Boyer Company, Inc., the claims administrator for the City on behalf of the Association, advised plaintiffs that "this complaint involves allegations which are clearly excluded from the coverage grants [and] the Association will not become involved in either the defense or indemnification of this case."  In a letter to Mann dated May 21, 2007, CCMSI identified itself as the claims administrator for the City, on behalf of the Association, and advised Mann it would cease payment for legal services (in the Developers' case) effective June 12, 2007.

On September 28, 2006, plaintiffs filed a complaint for declaratory judgment asserting the Association had a duty to

- 4 -

defend or indemnify plaintiffs in the section 1983 action. On April 20, 2007, the Association filed its counterclaim for declaratory judgment asserting it had no duty to defend or indemnify plaintiffs in the section 1983 action because RMA 1 and RMA 2 were subject to exclusions set forth in RMA 3 applicable to RMAs 1 and 2. The Association relied upon the following exclusion found in RMA 3:

> "This coverage does not apply:
>
> * * *
>
> (L) To actions for or arising out of condemnation; reverse or inverse condemnation; zoning and land use determinations; the taking, in whole or in part, of any real or personal property or any interest therein, or the right to the possession, benefit, use or enjoyment thereof; adverse possession; dedication by adverse possession; trespass; or similar actions[.]"

Further, the Association asserted that the coverage granted to the City under RMA 4 was subject to the following additional exclusions:

> "The following additional exclusions apply only to coverages provided by this form. The Association should not be liable

- 5 -

to make payments for 'loss' in connection with any claim made against the [m]embers based upon or arising out of the following:

* * *

(7) actions for or arising out of condemnation; reverse or inverse condemnation; the taking, in whole or part, of any real or personal property or any interest therein or the right to the possession, benefit, use of enjoyment thereof; adverse possession; dedication by adverse possession; trespass; or similar action;

* * *

(15) any violation of civil or constitutional rights."

The Association asserted that the Developers sought relief based upon "actions for or arising out of zoning and land use and/or the right to the possession, benefit, use or enjoyment of real or personal property and/or similar actions" excluded by paragraph (L) contained in RMA 3, and paragraph (7) contained in RMA 4. Further, the Association asserted that any claim "deemed to arise" under RMA 4 was also excluded by paragraph (15) contained in RMA 4. Additionally, the Association asserted that the Developers' allegations did not involve an occurrence and did not

allege advertising injury, bodily injury, property damage, or personal injury as defined in RMA L-1.

Upon motions for summary judgment, the circuit court entered declaratory judgment in the Association's favor. This appeal followed.

Before addressing the merits of this appeal, we first address the Association's motion to strike and dismiss, which we ordered taken with the case. The Association argues that this court should strike plaintiffs' brief and dismiss this appeal because plaintiffs "omit the key facts that are completely devastating to their case" in violation of Supreme Court Rule 341(h)(6) (210 Ill. 2d R. 341(h)(6)). Specifically, the Association argues plaintiffs "make no mention, in the facts or argument, of the exclusions in [the Agreement]."

"The striking of an appellate brief, in whole or in part, is a harsh sanction" and is "appropriate only when the alleged violations of *** procedural rules *** interfere with or preclude review." People v. DeRossett, 237 Ill. App. 3d 315, 325, 604 N.E.2d 500, 507 (1992). We find that our review is not hindered by the alleged error and decline to strike the Association's brief. The record on appeal contains all of the documents necessary for our review. Accordingly, defendants' motion to strike and dismiss is denied.

Plaintiffs argue the trial court erred by granting the

Association's motion for summary judgment because the Association has a duty to defend or indemnify plaintiffs in the section 1983 action.

The Association argues it has no duty to defend or indemnify plaintiffs in the section 1983 action because the section 1983 action "arise[s] out of zoning and land use determinations, the taking in whole or in part of any real or personal property, or any interests therein, the right to the possession benefit, use or enjoyment of real or personal property, or similar actions" for which exclusions apply. The Association does not challenge plaintiffs' use of section 1983 as a vehicle to present plaintiffs' claims. Instead, the Association contends that various exclusions apply that relieve the Association of its duty to defend or indemnify plaintiffs in the section 1983 action.

Initially, the Association contends that plaintiffs waived "any argument before this court that [plaintiffs] may have had with respect to the applicability of the exclusions to the [Developers'] suit" because plaintiffs (1) failed to "mention" the exclusions in their appellate brief, (2) failed to "discuss them" in their motion for summary judgment, and (3) did not respond to the Association's motion for summary judgment. The Association cites no authority for the proposition that it is the insured's burden to affirmatively demonstrate an exclusion is not

applicable, and we have found none.  But see <u>Pekin Insurance Co. v. Miller</u>, 367 Ill. App. 3d 263, 267, 854 N.E.2d 693, 697 (2006) (the insurer has the burden to affirmatively demonstrate the applicability of an exclusion).  Accordingly, we reject the Association's argument.

In support of the Association's argument that it has no duty to defend or indemnify plaintiffs in the section 1983 action, it relies upon the following exclusion set forth in RMA 3:

> "This coverage does not apply:
>
> * * *
>
> (L) To actions for or arising out of condemnation; reverse or inverse condemnation; zoning and land use determinations; the taking, in whole or in part, of any real or personal property or any interest therein, or the right to the possession, benefit, use or enjoyment thereof; adverse possession; dedication by adverse possession; trespass; or similar actions[.]"

Further, the Association relies upon the following exclusion set forth in RMA 4:

> "The following additional exclusions apply only to coverages provided by this

form.  The Association should not be liable to make payments for 'loss' in connection with any claim made against the [m]embers based upon or arising out of the following:

* * *

(7) actions for or arising out of condemnation; reverse or inverse condemnation; the taking, in whole or part, of any real or personal property or any interest therein or the right to the possession, benefit, use of enjoyment thereof; adverse possession; dedication by adverse possession; trespass; or similar action[.]"

The Association cites in support of its argument "a number of Illinois decisions interpreting similar language" as found in the Agreement in this case.  However, none of the cases the Association cites allege a valid claim under section 1983.

A trial court's grant of summary judgment is subject to a <u>de novo</u> review upon appeal.  <u>Outboard Marine Corp. v. Liberty Mutual Insurance Co.</u>, 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209 (1992).  Under Illinois law, an insured contracts for and has a right to expect two separate and distinct duties from an insurer: (1) the duty to defend him if a claim is made against him; and (2) the duty to indemnify him if he is found legally liable for

the occurrence of a covered risk. <u>Conway v. Country Casualty Insurance Co.</u>, 92 Ill. 2d 388, 394, 442 N.E.2d 245, 247 (1982); <u>Empire Fire & Marine Insurance Co. v. Clarendon Insurance Co.</u>, 267 Ill. App. 3d 1022, 1026, 642 N.E.2d 790, 793 (1994). The duty to defend an insured is much broader than the duty to indemnify. <u>Crum & Forster Managers Corp. v. Resolution Trust Corp.</u>, 156 Ill. 2d 384, 393-94, 620 N.E.2d 1073, 1079 (1993). An insurer may be required to defend its insured even when there will ultimately be no obligation to indemnify. <u>Zurich Insurance Co. v. Raymark Industries, Inc.</u>, 118 Ill. 2d 23, 52, 514 N.E.2d 150, 163 (1987).

A liability insurer's duty to defend arises when the insured tenders defense of a suit against him that alleges facts which, when taken as true, raise the potential for coverage occurring during the effective policy period. <u>Empire Fire & Marine</u>, 267 Ill. App. 3d at 1026, 642 N.E.2d at 793. In determining whether it has a duty to defend a suit, an insurer is limited to comparing the bare allegations of the complaint with the face of the policy of insurance. <u>Crum & Forster</u>, 156 Ill. 2d at 393, 620 N.E.2d at 1079.

The threshold a complaint must meet to present a claim for potential coverage, and thereby raise a duty to defend, is minimal. <u>West Bend Mutual Insurance Co. v. Sundance Homes, Inc.</u>, 238 Ill. App. 3d 335, 337-38, 606 N.E.2d 326, 328 (1992). Any

doubts about potential coverage and the duty to defend are to be resolved in favor of the insured.  <u>West Bend</u>, 238 Ill. App. 3d at 338, 606 N.E.2d at 328.

In this case, the Developers sought to redress violations of constitutional rights.  Had the suit been based solely on "zoning and land use determinations, the taking in whole or in part of any real or personal property, or any interests therein, the right to the possession benefit, use or enjoyment of real or personal property, or similar actions" as the Association contends, it would have involved purely state law questions and would not have been cognizable in federal court, absent diversity.  The Developers' suit against plaintiffs is a suit to vindicate constitutional rights and was not excluded by paragraph (L) set forth in RMA 3 or paragraph (7) set forth in RMA 4.

In support of plaintiffs' argument, RMA 2 sets forth the following:

> "II. 'PERSONAL INJURY' *** LIABILITY
>
> COVERAGE EXTENSION.
>
> The Association will pay on behalf of the [m]embers all sums which the [m]embers shall become legally obligated to pay, defined as 'ultimate net loss', because of 'personal injury' *** to which this coverage applies, sustained by any person or organiza-

tion and arising out of the conduct of the [m]ember's business during the 'coverage period', within the 'coverage territory'."

RMA L defines "personal injury" as an injury arising out of "discrimination against an individual or group on any basis prohibited by the law of Illinois or of the United States of America" and committed during the coverage period.

In further support of plaintiffs' argument, RMA 2 also sets forth the following:

"VIII. CIVIL/CONSTITUTIONAL RIGHTS *** COVERAGE EXTENSION.

The Association will pay on behalf of the [m]embers all sums which the [m]embers shall become legally obligated to pay, defined as 'ultimate net loss', because of:

(1) *** 'personal injury' *** arising out of a violation of civil or constitutional rights *** but only if such damages are sought in a civil suit brought under one or more of the following civil rights statutes: United States Code Title 42 [section] 1981, 1982, 1983, 1985, or 1986[.]"

As stated above, RMA L defines "personal injury" as an injury arising out of "discrimination against an individual or group on

any basis prohibited by the law of Illinois or of the United States of America" and committed during the coverage period. In this case, the Developers filed a complaint against plaintiffs seeking monetary damages for alleged violations of the Developers' constitutional rights under section 1983 of the Civil Rights Act. See 42 U.S.C. §1983 (2004).

The Association admits "there is no civil or constitutional rights act violation exclusion that applies to [RMA 1 and RMA 2] coverage grants." However, the Association argues an exclusion set forth in RMA 4 applies and "[f]or this reason, the trial court's decision should be affirmed."

RMA 4 is a separate form and not an endorsement to RMA 1, 2, or 3. RMA 3 is an endorsement to forms RMA 1 and 2, but not RMA 4. RMA 4 provides for payment by the Association on behalf of the City because of a "'wrongful act' occurring during the 'coverage period'." In this case, plaintiffs do not argue the Association has a duty to defend or indemnify plaintiffs in the section 1983 action because the Developers alleged a "wrongful act" as contained in RMA 4. Plaintiffs argue the Developers alleged a "personal injury" or "property damage" as contained in RMA 1 and 2. An exclusion set forth in RMA 4 does not apply to RMA 1 and 2; nor does an exclusion set forth in RMA 3 apply to RMA 4.

Because we have found the Developers alleged a "per-

sonal injury" as defined by the Agreement, which, if taken as true, raises the potential for coverage during the effective policy period and thus, the Association's duty to defend plaintiffs against the claims of the Developers, we need not discuss whether the Developers also alleged "property damage" as defined by the Agreement.

For the reasons stated, we reverse the trial court's judgment and remand for further proceedings consistent with the views expressed herein.

Reversed and remanded.

APPLETON, P.J., and TURNER, J., concur.