(No. 55822.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOHNNY McKIBBINS, Appellee.

*Opinion filed May 18, 1983.*

Tyrone C. Fahner, Attorney General, of Springfield and Richard M. Daley, State's Attorney, of Chicago (Melbourne A. Noel, Assistant Attorney General, of Chicago, and Michael E. Shabat, Joan S. Cherry, and Lawrence T. Krulewick, Assistant State's Attorneys, of counsel), for the People.

Steven Clark, Deputy Defender, of Chicago (Nancy G. Abrahams, of counsel), for appellee.

CHIEF JUSTICE RYAN delivered the opinion of the court:

A jury in the circuit court of Cook County found the defendant, Johnny McKibbins, guilty of murder, armed robbery, and armed violence in connection with his participation in the armed robbery and murder of a parking lot attendant which occurred on February 14, 1979. The

appellate court reversed and remanded for a new trial (100 Ill. App. 3d 787), holding (1) that detailed testimony and argument concerning a subsequent armed robbery should not have been admitted into evidence, since it confused the issue and deprived the defendant of a fair trial, and (2) the trial court erred by admitting for impeachment purposes evidence of all of the defendant's 20 prior misdemeanor theft convictions. We granted the People's petition for leave to appeal, and we now reverse the appellate court.

The evidence introduced at trial indicates that on February 14, 1979, Clinton Hutchinson went to work at a parking lot located on Milwaukee Avenue in Chicago. When he left his home at approximately 5 a.m., he had in his possession a French coin dated 1811 with a hole in the center.

At approximately 11 a.m., Dennis Murphy, an investigator with the Chicago police department, found Hutchinson's body in a small shack in the center of the parking lot. The victim was handcuffed with handcuffs which were made in Taiwan and had "STOP" imprinted on them. Investigator Murphy observed that Hutchinson had been shot in the right temple, his pockets had been reversed, and the knees of his pants were dirty.

At defendant's trial, detailed evidence of another offense was introduced by the State. In summary, it showed that on February 16, 1979, defendant, Johnny McKibbins, James Matthews and John Brown robbed Phillips Jewelers, which is located in the same area of the city of Chicago as the parking lot. At about 10:50 a.m., one of the three men walked up to Harold Phillips, the proprietor of the jewelry store, and announced a robbery. McKibbins and the other man went behind the counter to collect the merchandise.

In response to a telephone call informing the police a robbery was in progress, Officer William Jaconetti went

to Phillips Jewelers. He saw Officer Louis Trafillio entering the store. He also saw James Matthews, one of the three robbers, remove a revolver from his waistband and point it at Officer Trafillio's head. Jaconetti, who was approximately 10 paces behind Trafillio, told Matthews to "[h]old it." Matthews fired a shot at Jaconetti. The shot removed the zipper from Jaconetti's jacket. Jaconetti fired back, wounding Matthews, who dropped to the sidewalk. The three robbers were then arrested.

Another officer, James Kehoe, searched Brown and found a French coin dated 1811 with a hole in it. He also found two pairs of handcuffs lying on the floor with the letters "STOP" imprinted on them.

Investigator Murphy, who had also been assigned to investigate the jewelry store robbery, interrogated McKibbins about his possible participation in the murder of Hutchinson. The defendant then confessed his involvement in the robbery of the jewelry store. Also, he later gave a statement concerning his involvement in the robbery and murder of Hutchinson. He told Officer William Baldree and, on different occasions, Assistant State's Attorney Magnuson and Investigator Murphy, that on February 14, 1979, he and John Brown drove to the Federal Correctional Center in Chicago. They picked up James Matthews and purchased some revolvers. The three men then drove to the parking lot on Milwaukee Avenue where Hutchinson worked. Carrying the revolvers and a pair of handcuffs with them, Matthews and Brown entered the shack while McKibbins stayed in the car. When they returned, Matthews instructed McKibbins to drive away fast because they had just "burned a guy." Brown then produced a rare coin with a hole in the center which was taken in the robbery and remarked they could get some money for it, although the hole would diminish its value. Matthews complained that they had not obtained as much cash from their crime as they

had hoped.

At defendant's trial for the murder of Hutchinson, other evidence concerning the jewelry store robbery was introduced in addition to that stated above. It was shown that during the robbery the proprietor of the store and several others were forced to lie on the floor. Pictures of the interior of the store were introduced. The proprietor identified these photographs and described how the three robbers had come into the store and described their conduct during the course of the robbery. He also testified as to the amount of money that had been taken and the merchandise that was missing, which was later returned to him by the police.

Generally, evidence of other crimes is inadmissible if relevant merely to establish the defendant's propensity to commit crime. (*People v. Lindgren* (1980), 79 Ill. 2d 129.) Evidence of the commission of other crimes is admissible, however, when such evidence is relevant to prove *modus operandi,* intent, identity, motive, or absence of mistake. (*People v. Baptist* (1979), 76 Ill. 2d 19; *People v. Gonzales* (1978), 60 Ill. App. 3d 980; see generally 2 Wigmore, Evidence sec. 304 (Chadbourn rev. ed. 1979).) In fact, this court has held that evidence of other offenses is admissible if it is relevant for any purpose other than to show the propensity to commit crime. *People v. McDonald* (1975), 62 Ill. 2d 448, 455; *People v. Dewey* (1969), 42 Ill. 2d 148, 157.

The appellate court relied upon *People v. Diaz* (1979), 78 Ill. App. 3d 277, in holding that a limited amount of evidence of the jewelry store robbery was admissible but that the detailed evidence of the robbery was error. In *Diaz* the defendant was tried for an armed robbery of a tavern, during which he had taken a gun from the tavern owner. The next day two women were robbed as they were emerging from their automobile. They notified the police, who later arrested three people for this of-

fense. The gun taken in the tavern robbery was found on one of the persons arrested. At the defendant's trial for the robbery of the tavern, detailed evidence was given concerning the robbery of the two women, including threats that were made to them and their children. The court held that evidence of the subsequent offense would have been admissible to show the circumstances of defendant's arrest and the recovery of the gun. However, the court held that the detailed evidence concerning the subsequent robbery of the women was error.

In *Diaz,* the defendant was not arrested during the robbery of the two women but after that robbery had been completed as a result of a report by the two women to the police. The court in that case held that although the evidence that the women had been robbed was relevant to show the circumstances of the defendant's arrest, details concerning the robbery of the women and the threats made to them were not. The robbery of the women had been completed and the robbers had left the scene of the crime before they were arrested. The relevant part of that crime to show the circumstances of their arrest would therefore be very limited.

In the case now before us, the robbery of the jewelry store was in progress when the arrests were made. It would be difficult to explain or describe circumstances surrounding the defendant's arrest without introducing a substantial amount of the evidence concerning the jewelry robbery. The facts in this case more closely resemble those in *People v. Lehman* (1955), 5 Ill. 2d 337, than those in *Diaz.*

In *Lehman,* an employee of a telephone company who made collections from public pay telephones was robbed while he was making his collections. Besides taking the money, the robbers also took the route book which showed the telephones from which the employee collected and the amount collected from each telephone. At

defendant's trial the employee testified that about eight weeks after the robbery, while making his collections, he saw an automobile following him; that he communicated this information to the police; that about an hour and a half later he saw police force the car that had been following him during this time to the curb and that he got out of his truck and joined the police, where he recognized the defendant as the man who had previously robbed him.

A police officer testified in detail how he had followed the defendant and another person, who were in the defendant's car, who, in turn, were following the telephone company vehicle. This tailing covered about an hour and a half period. The officers testified as to the manner that the defendant followed the telephone company vehicle and as to its starts and stops; how the police forced the defendant's car to the curb, forced the defendant and his companion to get out, and how the defendant attempted to dispose of a gun when he got out of the vehicle. Following the defendant's arrest, sunglasses and other equipment similar to those that had been used in the previous robbery were recovered. The court stated:

> "The law distrusts the inference that because a man has committed other crimes he is more likely to have committed the current crime. And so, as a matter of policy, where the testimony has no value beyond that inference, it is excluded. But where the evidence is independently relevant it is admissible as, for example, where it shows motive or intent, identity, absence of mistake or accident, or the existence of a common scheme or design." *People v. Lehman* (1955), 5 Ill. 2d 337, 342-43.

In the case now before this court, in addition to its relevance to show the circumstances of the defendant's arrest, evidence concerning the jewelry store robbery is also relevant to specifically connect the three individuals who perpetrated this robbery with the Hutchinson murder. As

noted above, following the arrest of the three robbers in the jewelry store, a search of the defendant's companion Brown produced the French coin with a hole in it that had been taken from Hutchinson when he was murdered.

There were also certain similarities between the two crimes. The same type of handcuffs were recovered from the three jewelry store robbers as were used on the murdered man. Although it was shown at the defendant's trial that this make of handcuffs could be readily purchased by anyone, the use of the same brand of handcuffs in the commission of this crime was relevant evidence, as was the evidence that the same three men were involved in both crimes and evidence that the robbers had forced the occupants of the jewelry store to lie on the floor. There was testimony that the murdered man's pants were soiled at the knees, from which it could be inferred that he, too, had been forced to kneel or lie down before he was shot.

The defendant contends that these similarities are only superficial and that it was error to permit a jury to conjecture from these similar circumstances that the jewelry robbers committed the murder. In establishing design or plan, there must be a degree of identity between the facts of the crime charged and those of the other offense in which the defendant was involved. The reason, of course, is that the defendant's participation in the crime charged may be inferred from his involvement in the other offense. Thus, to avoid the general rule of nonadmissibility of evidence of other crimes, the two offenses must be so similar that evidence of one offense tends to prove the defendant guilty of the offense charged. 2 Wigmore, Evidence sec. 304, at 249 (Chadbourn rev. ed. 1979).

However, the same degree of identity of the two offenses is not necessary when evidence of defendant's involvement in another offense is not offered to prove the commission of the crime charged, but is offered to prove the absence of an innocent frame of mind or the presence

of criminal intent. In such a case, mere general areas of similarity will suffice. If these general similarities are shown, evidence of the defendant's involvement in another offense may be shown to establish the necessary criminal intent of the defendant in the offense charged. 2 Wigmore, Evidence secs. 302, 304, at 241-47, 249-51 (Chadbourn rev. ed. 1979).

In the case before us the defendant's involvement in the murder was established by his statements to the police officers and to the assistant State's Attorney. His companion Brown's involvement in the murder was established by his possession of the rare coin with a hole in it. However, in the defendant's statement he said that he had remained in the car while his two companions had entered the shack in the parking lot to rob Hutchinson, who was killed during the robbery. Evidence that the defendant, just two days later, was involved in another armed robbery with the same two companions, in which the other similarities noted were also present, was admissible to dispel any idea that the defendant had been somehow innocently involved in the robbery-murder. Although he may not have directly and actively participated in the actual robbery and murder, his involvement in the subsequent offense with the same two companions and the other similarities noted tend to establish that he participated in the previous offense with the necessary criminal intent. The evidence was thus relevant for a purpose other than to show the defendant's propensity to commit crime and was therefore admissible. *People v. Cole* (1963), 29 Ill. 2d 501, 505; *People v. Dewey* (1969), 42 Ill. 2d 148, 157; *People v. McDonald* (1975), 62 Ill. 2d 448, 455.

The appellate court was critical of the detailed evidence of the jewelry store robbery that was admitted at the trial of the murder case. We agree that it was not necessary to conduct a mini-trial of the jewelry store robbery case in order to establish acts from which defendant's criminal in-

tent with regard to the robbery-murder could be inferred, and for the sake of economy of judicial time, we advise against such detailed evidence of other offenses. However, we cannot say that the detailed evidence in this case constituted prejudicial error. Also, the statements concerning the armed robbery of the jewelry store contained in the prosecutor's opening statement and closing arguments do not constitute reversible error. The statements merely referred to and summarized the testimony introduced at trial which we have found to be admissible.

The defendant made a motion *in limine* to bar the State from introducing any evidence of his prior convictions by way of impeachment should he elect to testify. The court, in looking over the defendant's record, noted that in the previous 10 years the defendant had been convicted 20 times. It appears from the record that most, if not all, of these convictions were for theft offenses, most of which were misdemeanors. The court denied the motion and ruled that the State could introduce evidence of all these convictions should the defendant testify. The defendant contended on appeal that because of this ruling by the trial court he was effectively prevented from testifying because of his fear of the prejudicial impact the disclosure of his prior convictions would have upon the jury. The appellate court held that it was error for the trial court not to limit the number of convictions the State could introduce by way of impeachment. This court has held that misdemeanor theft convictions may be used for impeachment purposes. *People v. Spates* (1979), 77 Ill. 2d 193.

We do not find that the failure by the trial court to limit the number of prior convictions the State could introduce indicates a failure to balance the probative value of this evidence against its prejudicial impact. Prior holdings of this court vest discretionary authority in the trial judge whether or not to allow evidence of prior convictions. In exercising this discretion, the trial judge is expected to bal-

ance the probative value of the evidence of prior convictions against the prejudicial impact of such convictions upon the jury. *People v. Spates* (1979), 77 Ill. 2d 193; *People v. Ray* (1973), 54 Ill. 2d 377; *People v. Montgomery* (1971), 47 Ill. 2d 510.

Defendant argued, and the appellate court agreed, that the trial judge did not perform the balancing test required by *Montgomery*. We do not agree. Defense counsel, in arguing the motion *in limine*, pointed out to the court that the balancing test must be applied. The court stated that it understood the appropriate test. The mere fact that he, nonetheless, ruled that all of the convictions could be introduced does not mean that the balancing test was not applied. The test to be applied is whether the prejudicial impact outweighs the probative value. The probative value with which we are concerned relates to the weight the offered evidence may have in destroying the credibility of the witness. *Montgomery* refers to various factors to be considered in making this determination:

> "[T]he nature of the crime, nearness or remoteness, the subsequent career of the person, and whether the crime was similar to the one charged." (*People v. Montgomery* (1971), 47 Ill. 2d 510, 518.)

The crimes involved in the convictions appear to be theft misdemeanors. It does not appear that any of them were crimes of violence from which the jury might infer that the defendant had a propensity for committing such crimes and thus probably committed the murder with which he was charged. The career of the defendant subsequent to these convictions does not demonstrate a change of character but rather a continuation of deceitful conduct. The prior convictions covered the entire 10-year-period limit of *Montgomery*. Therefore, although some may have been remote, defendant's conduct demonstrated a consistent pattern of dishonesty. The probative value of such evidence as it relates to the defendant's credibility was extremely convincing and far outweighed any prejudicial impact that the

evidence would have on the question of the defendant's guilt of the violent crime of murder. We noted above that the discretion in performing the balancing test is vested in the trial court. We do not find that this discretion was abused. Defendant can have no expectation that evidence of this nature will not be introduced simply because it is detrimental to his cause.

The appellate court indicated that some number of convictions less than the total could have been properly introduced to impeach the defendant if he testified. The question would then become which of these convictions would be admitted, those nearest in point of time to the crime charged or those most distant? Also, how many convictions would be sufficient to impeach the defendant's credibility? It may be that a single theft conviction would be enough to impeach the defendant in the eyes of one juror, whereas something more would be required for others. The defendant had compiled an overwhelming record of dishonesty. He had furnished the prosecution with substantial ammunition. A trial is an adversary proceeding. The State had the right and the obligation to use all of the impeaching evidence it possessed in order to destroy the credibility of the defendant if he were to testify. After compiling such a record, the defendant should not now expect the court to prevent the State from showing to the jury that he is utterly unworthy of belief. If the defendant in this case was thus prevented from testifying, this is a consequence of his own wrongdoing.

Accordingly, the judgment of the appellate court is reversed and the judgment of the circuit court of Cook County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*