THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRIAN K. JENNINGS, Defendant-Appellant.

Fourth District   No. 4—94—0791

Opinion filed April 19, 1996.

STEIGMANN, J., specially concurring.

Daniel D. Yuhas and Lawrence J. Essig, both of State Appellate Defender's Office, of Springfield, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and James Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

After a jury trial, defendant, Brian Jennings, was convicted of burglary (720 ILCS 5/19—1 (West 1992)), in Macon County circuit court. He was sentenced to seven years' imprisonment. Defendant appeals, contending the trial court committed reversible error by allowing his impeachment with evidence of a prior conviction. Defendant further claims the trial court failed to rule upon his motion for reduction of sentence. We affirm.

On the night of February 23 and 24, 1994, Wendell Austin was visiting his girlfriend, Angela Cook, sister of defendant, with whom defendant lived. Austin was in the business of buying and selling cars and had left a recently purchased 1987 Nissan parked at the back of Cook's house. Austin sometimes kept a briefcase with cash in his purchased cars but did not do so on that particular day. Austin never locked his cars. This was common knowledge among his acquaintances, including defendant.

Cook testified she locked her doors after midnight with a dead bolt lock. Defendant had a house key but not a key to the dead bolt. On the night of February 23, Cook and Austin retired for the night about midnight. Cook locked the dead bolt and took the telephone off the hook because they did not want to be disturbed. Cook testified it was very cold and snowing that night.

Defendant had gone out earlier in the evening of February 23 and returned to the residence around midnight. Stephanie Weissel, a neighbor whose apartment looked out over the parking lot behind Cook's house, saw two men enter the parking lot area around midnight on February 23. She described the clothing they were wearing and stated one man carried what looked like a tarp. One man went to the window of Cook's house and looked inside. The other man went over to Austin's Nissan and made what she described as a prying motion with what she thought was a crowbar. She saw the tarp lying on the ground in the snow. The man entered the car and rummaged around in the front seat and the glove box. Then the two men changed places and the first man in the car looked in the house window while the other man entered the car and was in both the front and back seats. Weissel testified she saw the car the next day in the parking lot and did not see any pry marks or scratches on the car.

Weissel's roommate, Jamison Gray, also testified he saw essentially the same things as Weissel except for a short period of time when he telephoned the police. Gray stated he never saw or heard either man knock on the door or window of Cook's house or call out to the occupants of the house.

When a white car pulled into the driveway of Cook's house, Weissel and Gray stated the two men initially walked away from the car and then toward it. Then the police arrived and arrested the men in the parking lot.

The police officers found two pry bars and a jacket by the rear window on the driver's side of Austin's car. The rear window was broken and there was damage to the backseat. The back of the seat was bowed out to provide access to the trunk. There was broken glass on the backseat of the car and on the freshly fallen snow which indicated the window was freshly broken. Defendant and his brother were the two men arrested at the scene wearing the clothes described by Weissel and Gray.

Defendant testified he had been locked out of Cook's house before and had always knocked on a window to gain her attention. However, when Austin came to visit her, defendant was locked out and could not gain Cook's attention because she and Austin did not like to be disturbed. Defendant returned to Cook's house around midnight and when he found himself locked out he became angry. He walked to a nearby relative's house and called Cook only to find the phone was off the hook. He became even more angry, blaming Austin rather than his sister. He grabbed a tire iron and returned to Cook's house with his brother. He wanted to damage Austin's car to gain his attention.

When defendant arrived at the parking area behind Cook's house, his brother went to the window of the house while defendant broke the window on Austin's car. He then entered the car. Defendant admitted damaging the car but denied intending to burglarize the car. He stated there was nothing in the car to take and he had a pocketful of money. Defendant also stated he knew the car was unlocked and there was no need to break a window to get in. He admitted intending to damage the car and this act was wrong but denied the burglary charge. Defendant also admitted he went to the window of Cook's house and his brother entered the car.

In rebuttal and over defendant's objection, the State introduced evidence of defendant's prior conviction for armed robbery for purposes of impeachment. Defendant was convicted and sentenced to a term of seven years' imprisonment.

Defendant maintains the trial court erred in failing to conduct a balancing test of the probative value versus the prejudicial effect before admitting evidence of his prior conviction. Further, defendant claims the trial court erred in admitting as evidence the information which charged him with the prior armed robbery and included detailed information about the crime.

■ Before admitting evidence of a prior conviction for purposes of impeachment, a trial court must balance the probative value versus the prejudicial effect. *People v. Williams*, 161 Ill. 2d 1, 38-39, 641 N.E.2d 296, 311-12 (1994). Impeachment of a witness' credibility by a prior conviction is allowed if the conviction was for either a misdemeanor involving dishonesty or false statement or a felony and the trial judge determines the probative value of the evidence substantially outweighs the danger of unfair prejudice. *People v. Montgomery*, 47 Ill. 2d 510, 516, 268 N.E.2d 695, 698 (1971); *People v. Maxwell*, 272 Ill. App. 3d 57, 61, 650 N.E.2d 298, 301 (1995). This court in *Maxwell* noted the *Williams* court was concerned about the erosion of the principles enunciated in *Montgomery* by the trial courts as they were letting almost any prior felony conviction be used for impeachment purposes and were not applying the balancing test. *Maxwell*, 272 Ill. App. 3d at 61, 650 N.E.2d at 301. The importance of conducting the balancing test as emphasized in *Williams* (161 Ill. 2d at 38-40, 641 N.E.2d at 311-12) was reemphasized in *Maxwell*. *Maxwell*, 272 Ill. App. 3d at 61-62, 650 N.E.2d at 301.

Defendant maintains the trial court did not conduct the proper balancing test before allowing the State to impeach his credibility by using his prior conviction for armed robbery. A review of the record indicates the parties argued over whether the offense of armed robbery was an offense of violence only or whether it involved dishon-

esty. Defense counsel argued the *Montgomery* decision, which first made a distinction between prior convictions for crimes which involved dishonesty and those which did not, did not allow use of all prior convictions for impeachment purposes but only those involving dishonesty; thus, defendant's prior conviction for armed robbery should not be used. Counsel inferentially cited *Williams* in support of his argument. The State argued armed robbery was essentially the ultimate theft and, therefore, was by definition a crime of dishonesty and admissible without question. After these arguments were made, the trial court ruled the State could use the armed robbery conviction for impeachment purposes.

Defendant argues the trial court made no findings and conducted no balancing test as required by *Williams* and *Maxwell* and urges this court to reverse and remand for a new trial. A trial court's decision to allow evidence of a prior conviction should not be reversed absent an abuse of discretion, although the trial court is expected to balance the probative value of the evidence against the prejudicial impact of the evidence before the jury. *People v. McKibbins*, 96 Ill. 2d 176, 187-88, 449 N.E.2d 821, 826 (1983). Defendant argues the failure of a trial court to recognize on the record it had alternatives is a failure to properly utilize its discretion. See *People v. Foster*, 271 Ill. App. 3d 562, 569-70, 648 N.E.2d 337, 342 (1995). Thus, defendant maintains because the trial court failed to realize it needed to conduct a balancing test before admitting evidence of a prior felony conviction even if it involved dishonesty, the trial court failed to recognize it had discretion in the matter and failed to properly exercise it.

The State maintains the trial court conducted the proper balancing test by denying defendant's motion to exclude the evidence of his armed robbery conviction. The State claims the trial court favored the State's reasoning armed robbery was a crime of dishonesty and because defendant's credibility was central to the issues in the case the prejudice was outweighed by the probative value of the evidence.

■ We have reviewed the record and find no suggestion the trial judge recognized his obligation to conduct the balancing test required by *Montgomery*. *Montgomery*, 47 Ill. 2d at 516, 518, 268 N.E.2d at 698, 699-700. When defendant objected to the use of his prior conviction for impeachment, the trial court merely denied his motion to exclude the conviction without further comment. The arguments by the attorneys before the ruling did not include reference to the judge's obligation to conduct the balancing test.

The judge's thoughts on the matter were only slightly more articulated during the hearing on defendant's post-trial motion where the issue was again raised. Again, both counsel for defendant and the

State argued in terms of whether the prior conviction was for a mere felony or a felony involving dishonesty. Despite citing both *Montgomery* and *Williams*, defense counsel did not suggest to the court a need to conduct a balancing test nor did the trial judge realize a need to do so. In denying defendant's post-trial motion, the trial court stated:

"First of all as to the, uh, use of armed robbery conviction for purposes of impeachment, the uh, *Williamson* [*sic*] case does not require an independent determination by a court. That case specifically, I think, brings *Montgomery* back where it started and that is that, uh, uh, felony convictions of dishonest nature can be used; whereas, felonies of a violent nature are not used because violence doesn't necessarily go to the question of dishonesty for the purposes of impeachment.

Armed robbery, as [the attorney for the State] indicated, is a theft; that is an act of dishonesty, and it is proper for, uh, impeachment purposes, so, even regardless of the new case, it would be proper."

It is obvious from the trial judge's comments he did not see a need to conduct a balancing test and apparently did not do so. The trial judge apparently automatically decided a prior conviction was admissible for impeachment purposes simply because he found it to be a crime of dishonesty. This is not in compliance with *Montgomery*, *Williams* and *Maxwell*. However, neither *Montgomery*, *Williams* nor their progeny have set forth a precise formula for the balancing process which is required. We do not mandate a specific formula either but we agree with the court in *People v. Elliot*, 274 Ill. App. 3d 901, 911, 654 N.E.2d 636, 644 (1995). The record should show the trial court understood and used its discretion and considered relevant factors on both sides of the scale.

■ Despite the trial court's failure to conduct a balancing test, this error does not require reversal. While defendant insists the evidence was close, a review of the evidence leads us to conclude the verdict likely would not have been any different without the evidence of defendant's prior conviction. Defendant testified he was at the scene only to damage Austin's car due to his anger toward Austin. However, he did not explain his brother's presence at the scene or his brother's entry into the vehicle and the apparent ransacking of the car done by both defendant and his brother. The evidence indicated two pry bars were found at the scene and there was apparent cooperation between the two brothers.

■ Defendant next contends the prior conviction was improperly admitted because of the inclusion of damaging irrelevant information. A copy of the judgment order was all that was necessary and

the inclusion of the detailed information concerning how the crime was committed found in the information charging the offense was surplusage and prejudicial and should not have been admitted. *People v. Dudley*, 217 Ill. App. 3d 230, 232, 576 N.E.2d 1110, 1112 (1991). However, because defendant did not object to the records on this ground or seek deletion of the irrelevant portions at the time they were admitted into evidence, any error was waived. *People v. Davis*, 54 Ill. App. 3d 517, 526, 369 N.E.2d 1376, 1384 (1977); *People v. Spenard*, 46 Ill. App. 3d 892, 897-98, 361 N.E.2d 856, 860 (1977).

One means by which to reduce the improper prejudicial effect of any felony conviction used for impeachment is to use the "mere fact" method. See *People v. Bramlett*, 276 Ill. App. 3d 201, 208-09, 658 N.E.2d 510, 515-16 (1995) (Steigmann, J., specially concurring). This approach would have been particularly appropriate here because it would have avoided the inclusion of damaging and irrelevant information regarding defendant's prior conviction for armed robbery. The mere fact approach requires the judge to first conduct the *Montgomery* balancing test. Then, if the conviction is to be used for impeachment, the jury is only advised the defendant has been convicted of a felony on a certain date in a certain place. It is not told the name of the felony and is obviously not exposed to detailed information about the crime as was the jury in this case.

The use of prior convictions to impeach a defendant is a difficult issue, and it has not been made easier by the *Williams* decision or the decisions that have tried to discern the meaning of *Williams*. No matter how the *Montgomery* test is applied, and no matter what *Williams* is taken to mean, the mere fact approach minimizes both the prejudicial effect of a prior conviction and the potential for error. If the prior conviction is for behavior similar to that for which the defendant is on trial, the mere fact method avoids the danger the jury will use the prior conviction to evaluate defendant's propensity to commit crime. The use of the mere fact approach is left to the discretion of the trial court.

Finally, defendant argues the trial court erred in failing to rule on his motion for reduction of sentence. The sentencing hearing was held in this case on August 5, 1994. Following sentencing, per request of defense counsel, the circuit clerk was directed to file a notice of appeal. The notice was filed on September 1, 1994. However, on August 29, 1994, defendant timely mailed a *pro se* motion for reduction of sentence. The motion also included a notice of filing and proof of service, a motion for appointment of counsel, an affidavit in support of the motion for reduction and supporting documentation. The circuit clerk file-stamped defendant's motion on September 2, 1994. No action was taken on defendant's motion.

Defendant argues, correctly, a pleading is considered timely filed on the day it is placed in the prison mail system by an incarcerated inmate. *People v. Johnson*, 232 Ill. App. 3d 882, 884, 598 N.E.2d 276, 277 (1992); *People v. Easley*, 199 Ill. App. 3d 179, 182-83, 556 N.E.2d 802, 804 (1990). Further, where a notice of appeal is filed after a motion to reduce sentence is filed, the trial court retains jurisdiction to consider the motion to reduce sentence. *People v. Giles*, 230 Ill. App. 3d 730, 733, 596 N.E.2d 53, 55-56 (1992).

■ Although defendant timely filed his motion for reduction of sentence with the clerk of the court, defendant made no effort to bring his motion to the attention of the trial court by arranging for a hearing on the motion. Section 5—8—1(c) of the Unified Code of Corrections (Code) (730 ILCS 5/5—8—1(c) (West 1992)) requires that the proponent of a motion to reduce sentence "shall exercise due diligence in seeking a determination on the motion" and the motion is not considered timely filed unless it is filed "together with a notice of motion, which notice of motion shall set the motion on the court's calendar on a date certain within a reasonable time after the date of filing." Unless a motion is brought to the attention of the court and the court is requested to rule on it, the motion is not effectively made. Merely filing a motion with the office of the clerk does not constitute a sufficient application. *People v. Taggart*, 268 Ill. App. 3d 84, 85, 644 N.E.2d 31, 32 (1994).

While defendant argues the trial court failed to rule on his motion, there is nothing in the record to indicate defendant complied with the requirements of section 5—8—1(c) of the Code or that the court was aware of the motion. A *pro se* defendant must comply with rules of procedure required of those represented by counsel and a court should not apply more lenient standards to a *pro se* defendant. *People v. DeRossett*, 237 Ill. App. 3d 315, 339, 604 N.E.2d 500, 516 (1992). Therefore, there was no error by the trial court as defendant did not bring his motion to reduce sentence to the attention of the court and the trial court was not obligated to consider a motion of which it was unaware. Since the motion was not effectively made, the trial court was without authority to consider it once the notice of appeal was filed.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

GREEN, J., concurs.

JUSTICE STEIGMANN, specially concurring:

Although I agree with the majority decision, I write specially to emphasize that the trial court erred three different ways in its handling of defendant's prior conviction. First, the court erred by stating that *Williams* permits impeachment by prior conviction only when the prior conviction involves dishonesty or false statement, the so-called "second prong" of *Montgomery*. Since the supreme court's decision in *Williams*, this court has held repeatedly that "first prong" convictions under *Montgomery*—those involving crimes punishable by death or imprisonment in excess of one year—are still admissible to impeach a testifying defendant within the trial court's discretion after it engages in the required *Montgomery* balancing test. This court's most recent decision so holding was *Bramlett* (276 Ill. App. 3d at 207, 658 N.E.2d at 515). Thus, this court has rejected the trial court's interpretation of *Williams* as barring such "first prong" convictions.

Second, as the majority decision properly points out, the trial court erred by not performing the *Montgomery* balancing test before permitting the use of defendant's prior conviction to impeach him. Even with "second prong" convictions, admissibility for impeachment purposes is not automatic, and especially in light of *Williams*, the record should affirmatively show that the trial court determined that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

Third, as in *Bramlett*, the trial court again could have—and should have—avoided the issue defendant raises concerning the improper inclusion of damaging and irrelevant information regarding his prior conviction of armed robbery. The court could have avoided this issue if it had utilized the "mere fact" method of impeachment by prior conviction. (See *Bramlett*, 276 Ill. App. 3d at 208-09, 658 N.E.2d at 515-16 (Steigmann, J., specially concurring).) After decades of successful use of the "mere fact" method of impeachment by prior conviction—especially throughout Central Illinois—it is difficult to justify continued use of an alternative method that, as here, tends to maximize the prejudicial effect and potential error of admitting the prior conviction to impeach the defendant. As an example, in the very case before us, had defendant properly objected at trial to the inclusion of the irrelevant portions of his prior armed robbery conviction, this court might well have reversed his conviction on that basis alone out of a concern that he was denied a fair trial. Such a reversal would have been wholly unnecessary.

As a last point, I emphasize that the trial court can—and should—utilize the "mere fact" method of impeachment *sua sponte* and not wait for either the prosecution or the defense to suggest it.

All aspects of the subject of impeachment by prior conviction are left to the trial court's discretion, and the court is in no way limited to handling such impeachment in a fashion suggested by the parties.