THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MAURICE G. LYONS, Defendant-Appellant.

Fourth District   No. 4—99—0485

Opinion filed August 25, 2000.

COOK, P.J., dissenting.

Daniel D. Yuhas and Arden J. Lang, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and Jeffrey K. Davison, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In April 1999, a jury found defendant, Maurice G. Lyons, guilty of vehicular invasion (720 ILCS 5/12—11.1 (West 1996)), aggravated battery (720 ILCS 5/12—4(b)(8) (West Supp. 1997)), intimidation (720 ILCS 5/12—6(a)(1) (West 1996)), and unlawful restraint (720 ILCS 5/10—3 (West 1996)). In June 1999, the trial court sentenced him to 10 years in prison on the vehicular invasion conviction, 10 years in prison on the aggravated battery conviction, and 10 years in prison on the intimidation conviction, with all sentences to run concurrently. (The court did not enter judgment on the unlawful restraint conviction because it was based upon the same physical act as the vehicular invasion conviction.)

Defendant appeals, arguing that the trial court erred by (1) denying him the right to present evidence purportedly showing that the victim had previously been involved in drug buys, (2) using the "mere-fact" impeachment method, and (3) imposing the recoupment order without first conducting a hearing to determine defendant's ability to pay. We affirm defendant's convictions and sentence and vacate the recoupment order and remand with directions.

## I. BACKGROUND

The evidence at defendant's trial showed the following. Melissa McMullen testified that at around 2:30 in the morning on August 9, 1998, she left work in Bloomington, Illinois, and drove to a nearby Jewel-Osco store. She parked in the fire lane near the store's entrance and went inside. As she left the store and walked toward her car, McMullen heard someone walking beside her. When she opened her driver's side car door, a man she had never seen before (later identified as defendant) approached her and pushed her inside. As defendant held McMullen down inside the car, he threatened to kill her if she did not shut up. He then repeatedly asked for her car keys. With her one free hand, McMullen flashed the headlights and honked the horn in an effort to attract the attention of a taxi driver in the parking lot. Defendant tried to stop her from signaling for help and again threatened to hurt or kill her.

Defendant then began demanding McMullen's purse and attempted to pull it from her neck. When she told him that she had no money, defendant told her that he just wanted a ride. McMullen eventually handed the car keys to defendant, who then realized that he could not drive her car because it had a manual transmission. He

forced McMullen into the driver's seat and he moved into the passenger's seat. Defendant told McMullen to drive out of the parking lot. She drove toward the taxi cab but did not try to talk with the driver because defendant told her he would kill her if she did. After she pulled out of the parking lot onto the street, she saw a police car coming toward them. McMullen swerved across traffic lanes, stopped in front of the police car, and ran to the officer.

Fred Martin, a Bloomington police officer, testified that, on the morning of the incident, he was responding to a possible domestic battery in the Jewel-Osco parking lot when he saw a car cross the median and stop near his patrol car. The driver of the car (McMullen) jumped out and yelled, "Oh, my God, I'm so glad you came by. This guy pushed me in my car and made me drive away." She then ran toward the patrol car and jumped in. Martin stated that McMullen was scared, cowering, and speaking quickly. Martin noticed that she had abrasions and scratches on her neck, shoulder, and arm. Based upon her reaction and statements, Martin believed that she did not know defendant. After talking further with McMullen, Martin approached defendant and asked him if he knew McMullen's name. Defendant told Martin that her name was Amy, but he was unable to provide her last name.

Brian Brown, a Bloomington police officer, testified that after he arrived on the scene he questioned defendant about the incident. Defendant told Brown that he and McMullen were boyfriend and girlfriend and they had gotten into an argument at the Jewel-Osco. Defendant denied hitting McMullen. Brown asked defendant what McMullen's name was. After staring at Brown for about a minute, defendant told Brown that her name was Ann. As Brown transported defendant in the patrol car, defendant complained that McMullen was his girlfriend and she was simply mad at him. Brown responded that if she was indeed defendant's girlfriend, he should know her name. After they arrived at the county jail, defendant told Brown that McMullen's first name was really Amber. Brown told him that he was wrong again.

Michael Lusher, a taxi driver, testified that as he sat in his taxi in the Jewel-Osco parking lot on the morning in question, he saw a man (later identified as defendant) holding a car door open, pushing and hitting a woman into the car, which was parked in the fire lane. Each time the woman attempted to get out of the car, defendant shoved her back down and "hit her a couple of more times." Lusher also heard a car horn honking and the woman yelling for help.

Defendant testified that he first met McMullen in January 1998 at his uncle's house. On that occasion, defendant sold McMullen half a gram of cocaine. Thereafter, McMullen called defendant on several occasions to arrange cocaine purchases. According to defendant, they would meet in various parking lots to complete the transactions.

On August 8, 1998, McMullen telephoned defendant and asked if he had any cocaine to sell her. Defendant told her that he did not have any, but he would call her if he got some. Around 2:30 the next morning, defendant phoned McMullen and told her to meet him at the Jewel-Osco store in 15 minutes if she wanted to buy some cocaine. Defendant then rode to the Jewel-Osco with his uncle. After waiting for about 10 minutes, defendant went inside the store to phone a taxi cab. He came back outside and sat in the car with his uncle for another 15 minutes before going inside the store to again phone the taxi company. As defendant left the Jewel-Osco, he saw McMullen drive up. She started to get out of her car, and defendant told her to get back in. He then got in the passenger's seat. McMullen told him that she only wanted to purchase a half gram of cocaine, but defendant had the cocaine cut into larger portions. He told her he would sell her a larger portion at a reduced rate of $150. She then went into the store for about a minute. During that time, defendant moved into the driver's seat. When McMullen came back out, she got in the passenger's seat. He gave her the cocaine, and she gave him $85. Defendant demanded the rest of the money, and she said she would pay him the next day. He returned the $85 and a struggle ensued over the cocaine. According to defendant, he was trying to grab her hand when the taxi driver came into the parking lot. McMullen was yelling, and defendant was cursing at her. Defendant blew the car horn to alert the taxi driver that it was defendant who wanted the cab.

Defendant told McMullen that he thought the taxi driver had called police, and they decided to tell the police that they were boyfriend and girlfriend and were just having an argument. As part of the story, defendant would call McMullen Ashley and she would call him Dee. McMullen got in the driver's seat, and they drove away from the Jewel-Osco. After she swerved and stopped in front of the patrol car, defendant told the officers their agreed-upon story.

During his direct testimony, defendant also testified that he had been convicted of two felony offenses in 1989 as well as two felony offenses in 1993.

A Jewel-Osco employee testified that, on the morning in question, defendant twice came into the store to call a taxi company.

Upon this evidence, the jury convicted defendant, and the trial court sentenced him as stated. This appeal followed.

## II. ANALYSIS

### A. The Trial Court's Refusal To Allow Evidence Purporting To Show the Victim's Previous Participation in Drug Buys

Defendant first argues that the trial court erred by denying him

the right to present evidence purporting to show that, on a number of previous occasions, McMullen had bought drugs from individuals other than defendant in various parking lots in and around Bloomington. Specifically, defendant contends that such evidence impeached McMullen's version of the incident and was "clearly relevant" to the charges against him. We disagree.

Although a witness' testimony may be impeached with evidence that tends to contradict or undermine its believability, such contradictory evidence may not be offered if it is merely collateral to the issues in the case. "A matter will be deemed collateral if, but for the fact that it contradicts a statement of a witness, it would be inadmissible or, put another way, that its only relevance to the underlying action is that it confutes an element of a witness' testimony." *People v. Abrams*, 260 Ill. App. 3d 566, 579, 631 N.E.2d 1312, 1322 (1994). The decision whether a matter is collateral lies within the trial court's sound discretion, and a reviewing court will not reverse that decision unless there has been a clear abuse of discretion resulting in manifest prejudice to the defendant. *People v. Breton*, 237 Ill. App. 3d 355, 364, 603 N.E.2d 1290, 1297 (1992).

In this case, the prosecutor made a motion *in limine* to exclude evidence purporting to show that McMullen had previously participated in drug deals with individuals other than defendant. After considering counsel's arguments, the trial court granted the motion, specifically finding that such evidence was collateral to the issues in this case. In so finding, the court stated, in pertinent part, as follows:

> "If [defendant] wants to say he's there to sell drugs and [McMullen] wants to say no, that's where it ends. You don't get to impeach her with past bad acts. Because that's the only purpose you're offering it [for]. ***
>
> *** The jury has to sort out whether or not she's telling the truth or him. Now, his response, well, I want to show that she's a liar about prior drug sales is offered only to contradict. It's not probative of any of the issues that the State has to prove."

We fully agree with the trial court. Whether McMullen had previously purchased drugs from other individuals in various parking lots was wholly irrelevant to the underlying issues in this case—that is, whether defendant approached McMullen in a parking lot, shoved her into her own car, threatened to kill her, attempted to take her purse, and forced her to drive away with him in the passenger seat. Thus, we conclude that the court did not abuse its discretion in granting the State's motion *in limine*, nor did the court's decision result in manifest prejudice to defendant.

## B. The Trial Court's Use of the "Mere-Fact" Impeachment Method

■ Next, defendant argues that, in light of *People v. Atkinson*, 186 Ill. 2d 450, 458, 713 N.E.2d 532, 536 (1999) (in which the supreme court rejected the mere-fact impeachment method, under which the jury hears only about the existence of a prior conviction and not the specific crime), the trial court abused its discretion by using the mere-fact method and failing to conduct the *Montgomery* balancing test to determine if the probative value of the conviction is substantially outweighed by the danger of unfair prejudice (*People v. Montgomery*, 47 Ill. 2d 510, 516, 268 N.E.2d 695, 698 (1971)). According to defendant, had the court conducted the *Montgomery* balancing test and rejected the mere-fact impeachment method, the evidence of at least some of his prior convictions would not have been admitted because its probative value was outweighed by the risk of unfair prejudice it presented. In response, the State contends that because defendant "clearly agreed" to the court's use of the mere-fact impeachment method, he cannot now complain that the court erred by doing so. We agree with the State.

"[A]n accused may not ask the trial court to proceed in a certain manner and then contend in a court of review that the order which he obtained was in error." *People v. Lowe*, 153 Ill. 2d 195, 199, 606 N.E.2d 1167, 1169 (1992). In *People v. Dixon*, 308 Ill. App. 3d 1008, 1018, 721 N.E.2d 1172, 1180 (1999), this court held that a defendant who had requested that the trial court use the mere-fact impeachment method could not argue on appeal that the court had erred by doing so. In so holding, we stated that "[d]espite its directive to trial courts not to use the mere-fact method in future cases, the *Atkinson* court did not indicate that trial courts have erred or abused their discretion when, upon either defendant's request or with his agreement, they used the mere-fact method in the past." *Dixon*, 308 Ill. App. 3d at 1018, 721 N.E.2d at 1180.

Here, prior to defendant's testimony and outside the jury's presence, defense counsel moved to exclude evidence of defendant's two 1993 aggravated battery convictions, as well as his 1989 burglary and theft convictions. Defense counsel argued that the evidence of defendant's aggravated battery convictions should not be admitted because its probative value was outweighed by the risk of unfair prejudice it presented. The trial court responded that it used the mere-fact impeachment method and was not sure the balancing process was even necessary if the jury was not to be informed of the specific crimes of which the defendant had been convicted. The court then asked defense counsel how the prejudicial effect of defendant's prior felony

convictions outweighed their probative value under the mere-fact impeachment method, and defense counsel responded, "I didn't realize that you allowed us to do it that way, which is fine." Thus, defendant, through his counsel, explicitly agreed to the court's use of the mere-fact impeachment method in this case. Accordingly, he cannot now complain about the court's decision to use the precise method he agreed to at trial.

Moreover, even accepting defendant's contention that the trial court erred by failing to conduct a *Montgomery* balancing test, we conclude that such error does not require reversal. In *People v. Jennings*, 279 Ill. App. 3d 406, 411, 664 N.E.2d 699, 704 (1996), this court held that despite the trial court's failure to conduct such a balancing test, a reviewing court may uphold a defendant's conviction where the evidence at trial indicates that the verdict likely would not have been different without the evidence of defendant's prior conviction.

A review of the evidence in this case leads us to conclude that the verdict likely would not have been different without the evidence of defendant's prior convictions. Defendant testified that he and McMullen had known each other for several months and the incident took place after a drug deal between the two of them went bad. However, upon questioning by police officers, he was unable to provide them with McMullen's real name and, instead, he gave them three incorrect first names. In addition, McMullen testified that she had never met defendant prior to the incident in which he walked up to her in a parking lot, shoved her into her car, threatened to kill her, and forced her to drive away. Her testimony about defendant's conduct was corroborated both by the taxi driver and the responding police officers.

## C. The Trial Court's Failure To Conduct a Recoupment Hearing

Last, defendant argues that the trial court erred by failing to hold a hearing to assess his ability to pay attorney fees under section 113—3.1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/113—3.1 (West 1996)). In *People v. Love*, 177 Ill. 2d 550, 563, 687 N.E.2d 32, 38 (1997), the supreme court held that trial courts are required to conduct hearings into defendants' financial resources as a precondition to ordering recoupment. The State concedes that the trial court ordered defendant to pay $200 for the services of his court-appointed counsel without first conducting a hearing to assess defendant's ability to pay. We accept the State's concession. Thus, we vacate the recoupment order and remand the cause for compliance with the requirements set forth in section 113—3.1 and *Love*.

## III. CONCLUSION

For the reasons stated, we affirm defendant's convictions and

sentence and vacate the recoupment order and remand with directions.

Affirmed in part and vacated in part; cause remanded with directions.

McCULLOUGH, J., concurs.

PRESIDING JUSTICE COOK, dissenting:

A matter is collateral if it is relevant only to contradict the in-court testimony of a witness, that is, if it is not relevant for any other purpose. For example, in a case involving a 1970 accident, exactly when in 1973 the witness moved to Tennessee was a collateral issue. *O'Brien v. Walker*, 49 Ill. App. 3d 940, 364 N.E.2d 533 (1977).

In the present case, evidence that McMullen may have been engaged in a drug purchase at the time of the incident is clearly relevant to the issues of the case and is not a mere contradiction of her in-court statement. Defendant did not commit the offense of vehicular invasion if he entered McMullen's vehicle with her permission to sell her drugs. The evidence would also have been important to the other charges. Was this a case of a stranger forcing himself into McMullen's car and attempting to take her money? Or was this a case where McMullen argued over the details of a drug transaction with an individual whom she knew?

The trial court, prior to the presentation of evidence, granted the State's motion *in limine*:

"Now, if you can tie this—to backtrack, if you can tie it into one of the elements, that's different. But frankly, whether or not the detention was lawful or not doesn't turn on whether Melissa McMullen *previously* sold crack or bought crack. It just doesn't. If she denies crack *that day*, buying or selling crack, then that is purely a jury question. They can decide from hearing from the defendant and from the victim whether or not that was a crack sale." (Emphasis added.)

It might be argued that evidence that McMullen purchased drugs on other occasions, from other individuals, is not very probative on the issue whether McMullen was purchasing drugs from defendant on the occasion charged. We would admit that evidence against defendant, however, if he were charged with selling drugs and argued there was some innocent explanation. Other crimes evidence is admissible, if relevant and not unduly prejudicial, to show anything other than a defendant's mere propensity to commit a crime, such as intent, motive, knowledge, or absence of mistake. *People v. Cloutier*, 156 Ill. 2d 483, 505, 622 N.E.2d 774, 785-86 (1993).

Even evidence of other crimes admitted to show a propensity to commit crime is *relevant*. The concern with such evidence is not that it is not relevant, but that it is unduly prejudicial to the defendant. *People v. Lucas*, 151 Ill. 2d 461, 485, 603 N.E.2d 460, 471 (1992) (not because it has no appreciable probative value, but because it has too much). That concern is not present with a witness, such as McMullen. See *People v. Paul*, 304 Ill. App. 3d 404, 410, 710 N.E.2d 499, 503 (1999) (nondefendant witnesses need less protection against impeaching information, because such witnesses have less at stake). If the evidence is relevant, it generally should be admitted.

The majority may believe defendant's evidence that McMullen was a participant in a drug deal is weak but that is no basis for excluding the evidence. The jury, and not the court, is charged with assessing the credibility of the witnesses and weighing the evidence. "In evaluating the incremental probative value of the evidence, the trial judge must assume that the evidence will be believed by the trier of fact." M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 403.1, at 190 (7th ed. 1999) (hereinafter Cleary & Graham).

The rule barring impeachment on collateral issues applies only to extrinsic evidence, *i.e.*, evidence of testimony other than from the witness himself. A major reason for the rule is to prevent the waste of time, and extrinsic evidence consumes more time than simple cross-examination of the witness. The trial court seemed to recognize that when it stated, in ruling on the motion *in limine*, that the jury could decide whether there was a crack sale "from hearing from the defendant and from the victim." But then the jury was not allowed to hear from the victim. Outside the presence of the jury, McMullen denied that she knew Mark Davis and denied that she ever purchased drugs or crack cocaine at the Red Fox parking lot. That evidence should have been presented to the jurors, who were entitled to see and hear McMullen's denial and determine the weight it should be given. Preventing McMullen's testimony from being discredited should not have been the trial court's primary concern.

Matters bearing upon the credibility of the witness, such as bias, interest, corruption, or coercion, are never collateral and may be contradicted by other testimony. Cleary & Graham § 607.2, at 411. In *People v. Hutson*, 223 Ill. App. 3d 50, 584 N.E.2d 975 (1991), a mother accused her boyfriend of abusing her child. During the boyfriend's trial, the court held that extrinsic evidence that the mother had neglected the child was properly excluded as collateral. Professor Graham agreed but noted the evidence should have been admitted if offered as relevant to establish the motive of the mother in accusing the boyfriend. Cleary & Graham § 607.2, at 411. The same is true in this

case. The evidence complained of should have been admitted to show McMullen's motive in accusing defendant, that motive being that she did not want to admit that she was engaged in a drug purchase.

When the prosecution is presenting evidence, we follow the approach that the admissibility of relevant evidence is favored; evidence that is relevant should be excluded only if its probative value is substantially outweighed by other factors. Cleary & Graham § 403.1, at 189. When the defendant is presenting evidence, however, we want some assurance that the evidence is reliable. Our approach is mistaken and deprives defendant of his rights under the sixth amendment. See *Paul*, 304 Ill. App. 3d at 411, 710 N.E.2d at 504. We should treat the prosecution and the defense the same and allow the jury to weigh all the relevant evidence.