SHARON CREASER, Petitioner-Appellee, v. DAVID CREASER, Respondent-Appellant.

Second District    No. 2—02—0517

Opinion filed July 29, 2003.

Wayne E. Brucar, of Brucar, Conger & Yetter, P.C., of Glen Ellyn, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, and Beth Ann Szerlong, Assistant State's Attorney, of counsel), for appellee.

JUSTICE CALLUM delivered the opinion of the court:

Respondent, David Creaser, appeals the denial of his motion to vacate *nunc pro tunc* an emergency order of protection granting exclusive possession of the parties' residence to petitioner, Sharon Creaser. We reverse.

On February 19, 2002, petitioner, assisted by the Du Page County State's Attorney, appeared before Judge Jane Hird Mitton. Petitioner sought an emergency order of protection granting her exclusive possession of the family residence pursuant to the Illinois Domestic Violence Act of 1986 (the Act) (750 ILCS 60/101 *et seq.* (West 2002)). The petition itself was a preprinted form with check boxes for standard allegations and blanks for handwritten information. Where the form asked for a description of the alleged abuse, petitioner wrote:

"On 2-15-02 at approx[imately] 1:00 PM [respondent] made accusations that I was stealing money from him—I tried to encourage 3rd party mediation—He got off the sofa to leave. I stood in front of him to ask that we get help. I had [the parties' 10-month-old daughter] in my right arm. He grabbed my left arm to push me out of the way. He still had hold of my left arm as he went thru the front door—pulling my right shoulder (and the baby) into the doorframe."

Where the form asked for the effects of the abuse, petitioner wrote that: "[b]ruises on my left bicep[s] were noticed the next day." Petitioner checked boxes on the form so as to aver:

"Both parties have the right to occupancy; and, considering the risk of further abuse by Respondent interfering with the Petitioner's safe and peaceful occupancy, the balance of the hardships favors the Petitioner because of the following relevant factors: Availability, accessibility, cost, safety, adequacy, location and other characteristics of alternative housing for each party and any minors or other dependents."

At the hearing, the court inquired where respondent would live if the order were entered. Petitioner suggested that he would stay with his parents, and then interjected that "[t]he reason for the petition is to retrieve my belongings out of the house. He has changed the locks so I don't have access to the house right now." She stated that he had also closed their checking and credit card accounts. The court asked petitioner if respondent had been arrested on a domestic violence charge, and petitioner stated that he would be that day. Neither the court nor the State asked petitioner whether respondent had ever

abused her in the past or whether she feared that he would abuse her in the future.

The court found that there would likely be irreparable injury if respondent were given notice of the proceedings. It entered an emergency order of protection giving petitioner exclusive possession of the residence and set the matter for a hearing on a plenary order of protection on March 8, 2002.

Respondent filed a motion to vacate the emergency order of protection *nunc pro tunc*. Judge Terence M. Sheen heard this motion and held the hearing on issuance of a plenary order of protection simultaneously on March 8, 2002. The court seems to have found that respondent had not abused petitioner, although its ruling is possibly ambiguous:

> "[T]he issue is whether or not there is physical abuse. I think there was a physical touching that was inappropriate. However, I think it appears that she was also interfering with his ability to leave. It seems it's both parties.
>
> So, therefore, I'm going to enter an order that prevents both parties from having any physical contact with each other."

The court stated that the order of protection was "removed" and entered a mutual restraining order which, *inter alia*, prohibited physical contact between the parties and ordered petitioner to give keys to the house to respondent. The court denied respondent's motion to vacate the emergency order on the basis that respondent's testimony that he had grabbed petitioner's wrist, given at the hearing on the plenary order, supported the granting of the emergency order.

On March 15, 2002, respondent filed a motion to reconsider the denial of the motion to vacate. After some confusion as to whether this motion should have been heard by Judge Mitton or Judge Sheen, Judge Sheen denied the motion on April 22, 2002. Respondent filed his notice of appeal on May 17, 2002. He argues that the granting of the emergency order of protection was error because (1) petitioner did not make the showing necessary for the *ex parte* issuance of an emergency order, and (2) petitioner did not show by the preponderance of evidence that there was abusive behavior by respondent. He argues that we should hear this case, although the emergency order expired by its own terms no more than 21 days after it was entered, either because there are residual effects on respondent from the entry of the order, or because the public importance of the issues involved in this matter warrants our review of it despite its mootness.

Because the emergency order of protection has expired, there is a question as to whether this appeal is moot. Respondent suggests two bases on which we can hear his appeal despite the expiration of the

order. First, he claims that "a record showing the existence of an order of protection against an individual has long term effects." Although common sense may so indicate, respondent has failed to refer us to any case or statutory law so holding. Without specifying further, respondent states that "[s]olely as an example, roadblocks to the Respondent's assertion of his Second Amendment rights exist where searches show an order of protection was held against him." Our review of Illinois law does not disclose any provisions that would restrict firearm ownership or use on the basis of an *expired* order of protection. Further, federal provisions that have come to our attention restrict firearm ownership or use only on the basis of current orders of protection or the equivalent. The Public Safety and Recreational Firearms Use Protection Act restricts possession of firearms by a person subject to a court order that restrains certain behavior toward an intimate partner or the child of the person or the partner (18 U.S.C. § 922(g)(8) (2000)), but once the order is expired, the person cannot reasonably be deemed to be "subject to a court order." See *Skillett v. Sierra*, 30 Kan. App. 2d 1041, 1047, 53 P.3d 1234, 1239 (2002). Thus, any decision we render will provide no relief to either party and will be essentially advisory.

▉▉ We generally do not review moot cases or render advisory opinions. See *In re Mary Ann P.*, 202 Ill. 2d 393, 401 (2002). However, the first issue that respondent raises—whether petitioner made the necessary showing for an emergency order—falls within the public interest exception to the mootness doctrine. That exception allows review of a formally moot question when (1) the moot question is one of public interest, (2) an authoritative determination of the issue is desirable for the guidance of public officers, and (3) the question will likely recur. See *Mary Ann P.*, 202 Ill. 2d at 402. Because the use of emergency orders under the Act is a widespread and important method of providing legal protection to the victims of domestic violence, we find that respondent's first issue meets the first and third criteria to fall within the public interest exception to the mootness doctrine. Because the use of *ex parte* proceedings under the Act makes it particularly critical that the courts be informed of the standards for the granting of emergency orders, and because the courts have not had an opportunity to examine the specific standards for the granting of emergency orders for the exclusive possession of the residence, we find that the second criterion is met for this issue as well.

Respondent's first claim of error (that the petitioner did not make the showing necessary for issuance of an emergency order) raises issues specific to *emergency* orders. Since an emergency order of protection cannot last for more than 21 days (750 ILCS 60/220 (West 2002)),

insufficient time for an ordinary appeal to this court, there is no opportunity to review the standards for issuance of an emergency order, except under an exception to the mootness doctrine. In contrast, respondent's second claim (that petitioner did not show by the preponderance of evidence that respondent abused her) is not couched in terms of the specific application of this standard to the issuance of emergency orders. Although there are clearly issues of burden of proof specific to emergency proceedings, respondent has framed the issue in terms that are equally applicable to plenary orders, and the issue is therefore potentially reviewable in a case with a live controversy. Thus, we review only respondent's first contention of error.

■ Turning to the merits, we find that petitioner failed to establish the grounds for the issuance of an emergency order. Section 217(a)(1)(ii) of the Act requires that, for a court to issue an order for exclusive possession of a residence on an emergency basis, the petitioner must establish:

> "[T]he immediate danger of further abuse of petitioner by respondent, if petitioner chooses or had chosen to remain in the residence or household while respondent was given any prior notice or greater notice than was actually given of petitioner's efforts to obtain judicial relief, outweighs the hardships to respondent of an emergency order granting petitioner exclusive possession of the residence." 750 ILCS 60/217(a)(1)(ii) (West 2002).

This requires the court to weigh the danger of further abuse against hardship to the respondent. This requirement is separate from and prior to that of section 214(b)(2)(B) of the Act (750 ILCS 60/214(b)(2)(B) (West 2002)), the general standard for granting exclusive possession of the residence, which requires the court to consider the balance of hardships between the petitioner and the respondent. Because the court is required to engage in a balancing test, its decision must be reviewed under an abuse-of-discretion standard. See *People v. Jennings*, 279 Ill. App. 3d 406, 410 (1996).

■ Although a balancing test affords a great deal of discretion to the trial court, that discretion cannot be unlimited. At a minimum, such a test requires that the court actually consider the factors that must be balanced. Absent such consideration, the court has abused its discretion. See *Jennings*, 279 Ill. App. 3d at 410. Thus, the court must consider *both* the hardship to the respondent *and* the danger of further abuse. This is not to say that a petitioner must meet some specific burden of showing that further abuse is likely. For instance, it would not necessarily be error for a court to issue an emergency order for exclusive possession of the residence solely on the basis of the petitioner's subjective impression that the respondent's state of mind

made further abuse likely. The court is merely required to consider both the factors to be balanced, and therefore must have information relevant to both factors before it. In this case, the court made some inquiry into the potential hardship to respondent, but elicited no information relevant to the likelihood of further abuse. The petition itself was likewise devoid of such information except for the conclusory statement:

> "Both parties have the right to occupancy; and, considering the risk of further abuse by Respondent interfering with the Petitioner's safe and peaceful occupancy, the balance of the hardships favors the Petitioner because of the following relevant factors: Availability, accessibility, cost, safety, adequacy, location and other characteristics of alternative housing for each party and any minors or other dependents."

This is a conclusion for the court, not petitioner.

■ The trial court may have applied a presumption that any time there has been *physical* abuse of the petitioner, the risk of further abuse outweighs any hardship to the respondent. (Nonphysical harassment can also constitute abuse under the Act. 750 ILCS 60/103(1), (7) (West 2002).) However, if the legislature meant that an emergency order for exclusive possession could be ordered in any case where there was physical abuse, it could have said so.

The State argues that the exigency that justified the emergency issuance of the order was that petitioner and the child were cut off from their possessions and sources of money. For the emergency grant of an order for possession of personal property, this would be critical; such an order is authorized when the "petitioner has an immediate and pressing need for possession of that property" (750 ILCS 60/217(a)(3)(iii) (West 2002)), but this is not the order that petitioner sought.

Because petitioner did not show that the conditions were met for issuance of an emergency order of protection for exclusive possession of the residence, the court should not have issued such an order, and respondent's motion to vacate the order *nunc pro tunc* should have been granted.

For the reasons stated, the judgment of the circuit court of Du Page County is reversed.

Reversed.

BOWMAN and O'MALLEY, JJ., concur.